STATE OF FLORIDA, Florida Board of Examiners of Nursing Home Administrators, and its members, Individually, and as members, American College of Nursing Home Administrators, et al., Plaintiffs-Appellants,

v.

F. David MATHEWS, Secretary of Health, Education and Welfare, Defendant-Appellee.

No. 75–1905.

United States Court of Appeals, Fifth Circuit.

Jan. 23, 1976.

---

Robert L. Shevin, Atty. Gen., Robert Woolfork, James D. Whisenand, Carol L. Reilly, Asst. Attys. Gen., Tallahassee, Fla., Wm. A. Geoghegan, Sp. Asst. Atty. Gen., Washington, D. C., for State of Fla., and others.

George D. Webster, Arthur L. Herold, Washington, D. C., for American College of Nursing, Etc.

Clinton Ashmore, U. S. Atty., Pensacola, Fla., Robert E. Kopp, David M. Cohen, App. Sect., Civ. Div., Dept. of Justice, Washington, D. C., for defendant-appellee.

Before COLEMAN, CLARK and INGRAHAM, Circuit Judges.

INGRAHAM, Circuit Judge:

The primary issue in this case involves the validity of 45 CFR § 252.10(b)(3),[1] a

---

1. 45 CFR § 252.10(b)(3) states:

   (3) "Board" means a duly appointed State board established for the purpose of carrying out a State program for licensure of administrators of nursing homes, and which is assigned all the duties, functions, and re-

portion of the regulation that governs state programs for licensing administrators of nursing homes which participate in the federal medical assistance program (Medicaid).

Medicaid[2] is a federal-state cooperative program that enables participating states to furnish medical assistance to individuals whose economic resources are insufficient to satisfy the cost of necessary medical services. States electing to participate in the Medicaid program are required to submit a plan for approval by the Secretary of the United States Department of Health, Education and Welfare. If the state plan is approved, the federal government will finance a portion of the assistance program.[3] States are entitled to include provisions for nursing home care in their programs,[4] but to gain federal assistance the plan must establish a licensing system for nursing home administrators. Section 1396g requires the licensing of nursing home administrators to be "carried out by . . . a board *representative* of the professions and institutions concerned with the care of chronically ill and infirm aged patients . . . . ."[5]

The State of Florida (appellant) elected to participate in the medicaid program and to include the optional nursing home provisions. Appellant enacted legislation in conformity with what it understood to be the Secretary's interpretation of the medicaid statutes.[6] In part, the statutory scheme created an eleven-member board of examiners to supervise the certification of nursing home admin-

istrators.[7] Statute requires a majority of the board members to be licensed nursing home administrators.[8]

After the Florida plan was approved, the Secretary proposed the following regulation to implement 42 U.S.C. § 1396g:

" . .. . [The licensing] board shall be composed of individuals representative of the professions and institutions concerned with the care and treatment of chronically ill or infirm elderly patients; *provided that less than a majority of the board membership shall be representative of a single profession or institutional category,* and provided further that the noninstitutional members shall have no direct financial interest in nursing homes. *For purposes of this definition, nursing home administrators are considered representatives of institutions.* This definition is effective July 1, 1973, or earlier at the option of the State." 45 C.F.R. § 252.10(b)(3) (emphasis added).

Because the Florida plan requires a majority of the board of examiners to be nursing home administrators, the Florida scheme under § 468.166(2)(b) is clearly inconsistent with 45 CFR § 252.10(b)(3).

On June 7, 1972, the State of Florida, joined by various professional groups, filed a complaint in federal district court to enjoin enforcement of 45 CFR § 252.-10. Finding neither ripeness for review nor standing in any of the plaintiffs, the court refused to reach the merits and dismissed the case. *Florida v. Richardson,* 355 F.Supp. 1027 (N.D.Fla.1973). On appeal the district court's ruling was

---

sponsibilities prescribed in paragraph (c)(2) of this section. Said board shall be composed of individuals representative of the professions and institutions concerned with the care and treatment of chronically ill or infirm elderly patients; provided that less than a majority of the board membership shall be representative of a single profession or institutional category, and provided further that the noninstitutional members shall have no direct financial interest in nursing homes. For purposes of this definition, nursing home administrators are considered representatives of institutions. This defini-

tion is effective July 1, 1973, or earlier at the option of the State.

2. 42 U.S.C. § 1396 et seq.

3. 42 U.S.C. § 1396.

4. 42 U.S.C. § 1396a.

5. 42 U.S.C. § 1396g(b) (emphasis added).

6. Florida statutes, § 468.163–468.178.

7. Florida statutes, § 468.166.

8. Florida statutes, § 468.166(2)(b).

reversed. *Florida v. Weinberger,* 492 F.2d 488 (5th Cir. 1974).

On remand, plaintiffs and defendant agreed on all material issues of fact by stipulation; only questions of law were in dispute. Cross-motions for summary judgment were filed. Concluding that the promulgation of 45 CFR § 252.10 was a reasonable exercise of the Secretary's authority, the district court granted defendant's motion. On appeal we consider whether the Secretary exceeded the authority vested in him by Congress by promulgating 45 CFR § 252.10 [9] and, thus, whether enforcement should be enjoined.

The statute governing judicial review of an agency's action states that the reviewing court shall

"(2) hold unlawful and set aside agency action, findings, and conclusions found to be—

(A) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law;

(B) contrary to constitutional right, power, privilege, or immunity;

(C) in excess of statutory jurisdiction, authority, or limitations, or short of statutory right . . . ."

5 U.S.C. § 706.

[1–4] The Secretary was empowered by 42 U.S.C. § 1302 to publish 45 CFR § 252.10. As stated by the Supreme Court in *Mourning v. Family Publications Service*:

"The standard to be applied in determining whether the [Secretary] exceeded the authority delegated to [him] . . . is well established . . . . Where the empowering provision of a statute states simply that the agency may 'make . . . such rules and regulations as may be necessary to carry out the provisions of this Act,' we have held that the validity of a *regulation promulgated thereunder will be sustained so long as it is 'reasonably related to the purposes of the enabling legislation.'*"

411 U.S. 356, 369, 93 S.Ct. 1652, 1660, 36 L.Ed.2d 318 (1973) (emphasis added). The empowering provision of the Social Security Act, 42 U.S.C. § 1302, contains language similar to the statute discussed in *Mourning* and, thus, requires the agency's regulation to be "reasonably related" to the purpose of the enabling legislation. *Johnson's Professional Nursing Home v. Weinberger,* 490 F.2d 841 (5th Cir. 1974), affirming, *Opelika Nursing Home, Inc. v. Richardson,* 356 F.Supp. 1338 (M.D.Ala.1973). Because of the deference generally accorded to the administrator's interpretation of a statutory scheme,[10] appellants shoulder a difficult burden to prove that the regulation is inconsistent with the purpose of the enabling legislation. *Johnson's Professional Nursing Home v. Weinberger,*

---

**9.** The Secretary published 45 CFR § 252.10 pursuant to authority vested in him by 42 U.S.C. § 1302. Section 1302 authorizes the Secretary to publish rules and regulations to implement the federal medical assistance program. Two qualifications are attached to the Secretary's rule making power: (1) The rule or regulation may "not [be] inconsistent with [the Social Security Act]; and (2) the rule or regulation should be "necessary to the efficient administration of the function with which [the Secretary] is charged . . . ." 42 U.S.C. § 1302.

**10.** Unless clearly erroneous or unreasonable, the interpretation of a statute by a regulatory agency that is charged with administering it is given considerable deference by federal courts. Such deference is usually justified on the basis of the agency's superior expertise in the area of its authority. The Secretary of Health, Education and Welfare is charged with supervising the medicaid program and is thus considered uniquely suited to implement the licensing procedure required by statute. *E.g., Udall v. Tallman,* 380 U.S. 1, 16, 85 S.Ct. 792, 13 L.Ed.2d 616 (1965); *Zuber v. Allen,* 396 U.S. 168, 192, 90 S.Ct. 314, 24 L.Ed.2d 345 (1969). *United States v. American Trucking Ass'n* 310 U.S. 534, 549, 60 S.Ct. 1059, 84 L.Ed. 1345 (1940). In *Norwegian Nitrogen Products Co. v. United States* the Supreme Court stated that deference is especially warranted in cases involving "a contemporaneous construction of a statute by the men charged with the responsibility of setting its machinery in motion; of making parts work efficiently and smoothly while they are yet untried and new." 288 U.S. 294, 315, 53 S.Ct. 350, 358, 77 L.Ed. 796 (1933). The reviewing court will not substitute its judgment for that of the agency.

*supra.* To determine whether the Secretary's action was reasonably related to the enabling legislation, this court will consider the statutory language, legislative history, and subsequent Congressional action.

■ Section 1396g(b) provides that the "[l]icensing of nursing home administrators shall be carried out by . . . a board *representative of the professions and institutions* concerned with the care of chronically ill and infirm aged patients . . . " (Emphasis added). Requiring licensing boards to be "representative" of the interested professions and institutions, the statute spoke in broad terms. It is not unusual, however, for Congress to draw a broad statutory structure and entrust in an agency, equipped with the necessary experience and resources, the duties of construction and implementation. *See Mourning v. Family Publications Service,* 411 U.S. 356, 364–75, 93 S.Ct. 1652, 36 L.Ed.2d 318 (1973). In fact, the Supreme Court has expressly noted that it is not "a reasonable canon of interpretation that the draftsmen of acts delegating agency powers, as a practical and realistic matter, can or do include specific consideration of every evil sought to be corrected. . . . [N]o great acquaintance with practical affairs is required to know that such prescience, either in fact or in the minds of Congress, does not exist. Its very absence, moreover, is precisely one of the reasons why regulatory agencies such as the Commission are created, for it is the fond hope of their authors that they bring to their work the expert's familiarity with industry conditions which members of the delegating legislatures cannot be expected to possess." *American Trucking Ass'ns. v. United States,* 344 U.S. 298, 309–10, 73 S.Ct. 307, 314, 97 L.Ed. 337 (1953) (citations omitted); *see also, Phelps Dodge Corp. v.*

*NLRB,* 313 U.S. 177, 193–94, 61 S.Ct. 845, 85 L.Ed. 1271 (1941).

After extensive study, Congress was well aware of the importance of an independent licensing board not dominated by a single profession or institution.[11] The rule promulgated by the Secretary, 45 CFR § 252.10, guarantees the representative character of state licensing boards and implements the Congressional mandate of 42 U.S.C. § 1306g(b).

In *Red Lion Broadcasting Co. v. FCC,* 395 U.S. 367, 381, 89 S.Ct. 1794, 1802, 23 L.Ed.2d 371 (1969), the Court stated that "the construction of a statute by those charged with its execution should be followed unless there are compelling indications that it is wrong, especially when Congress has refused to alter the administrative construction." *Accord, Zemel v. Rusk,* 381 U.S. 1, 11–12, 85 S.Ct. 1271, 14 L.Ed.2d 179 (1965). Congress has refused to alter the Secretary's construction of 42 U.S.C. § 1396g(b). Since 45 CFR § 252.10(b)(3) became final on March 29, 1972, Congress has amended 42 U.S.C. § 1396g twice; each time it refused to modify the Secretary's specification concerning the composition of the state board of examiners required to qualify under the federal medical assistance program.[12]

Accordingly, we conclude that the Secretary did not exceed authority vested in him by 42 U.S.C. § 1302.

■ Appellants also contend that enforcement of 45 CFR § 252.10(b)(3) should be enjoined as arbitrary and capricious. The reviewing court, therefore, must determine whether there is a rational basis to support the Secretary's action. *Bowman Transportation, Inc. v. Arkansas-Best Freight System, Inc.,* 419 U.S. 281, 284–86, 95 S.Ct. 438, 42 L.Ed.2d 447 (1974); *Carlisle Paper Box Co. v. NLRB,* 398 F.2d 1, 6 (3rd Cir. 1968). The test is a narrow one with deference

11. *E.g.,* 112 Cong.Rec. 10994–95; 113 Cong. Rec. 11419, 33475, 33630–31, 11419. "Social Security Amendments of 1967," Hearings on H.R. 12080 before the Senate Committee on Finance, 90th Congress, First Session 911–12, 1836–65; "Conditions and Problems in the Nation's Nursing Homes," Hearings before the Subcommittee on Long-term Care of the Special Committee on Aging, United States Senate, 89th Congress, First Session.

12. Public Law 92–603, 84 Stat. 1450–52 (Oct. 30, 1972); Public Law 93–233, 87 Stat. 973 (Dec. 31, 1973).

given to the Secretary's action—especially where the challenge involves a construction of a statute by the agency responsible for implementing a new program. *Udall v. Tallman,* 380 U.S. 1, 16–17, 85 S.Ct. 792, 13 L.Ed.2d 616 (1965); *American Fed. of Labor & Congress of Industrial Organization v. Brennan,* 390 F.Supp. 972, 973–74 (D.D.C.1975).

In this case we conclude that the Secretary has promulgated a rational, ascertainable standard to clarify the composition of a representative board of examiners as required by the enabling legislation.

Finally, appellants assert that the regulation 42 C.F.R. § 252.10 is unconstitutional for two reasons: (1) The regulation discriminates against nursing home administrators; and (2) the regulation impinges upon powers reserved to the state under the Tenth Amendment.

In 42 U.S.C. § 1396g Congress provided that federal funds would be made available to states desiring to participate in the nursing home provisions of the medicaid program only if the state includes a specified process for licensing nursing home administrators. The Secretary interpreted the Congressional directive and required the states to create licensing boards without a single profession contributing a majority of members. 45 CFR § 252.10(b)(3). Appellants contend that this interpretation offends due process and equal protection because it requires a licensing procedure of nursing home administrators that differs from the procedure for licensing other professionals which render services covered by the federal assistance program. Nevertheless, it is clear that the due process and equal protection doctrines do not constitute an absolute ban upon classifications. *E.g., Weinberger v. Salfi,* 422 U.S. 749, 95 S.Ct. 2457, 45 L.Ed.2d 522 (1975); *San Antonio Ind. Sch. Dist. v. Rodriguez,* 411 U.S. 1, 93 S.Ct. 1278, 36 L.Ed.2d 16 (1973); *Dandridge v. Williams,* 397 U.S. 471, 90 S.Ct. 1153, 25 L.Ed.2d 491 (1970); note, 72 Mich.L.Rev. 508 (1974).

This is not a case involving a "suspect classification" (e. g., race, sex and alienage), or a "fundamental right" (e. g., voting, interstate travel and free speech); thus, the classification will be sustained *unless* it is " 'patently arbitrary' and bears no rational relationship to a legitimate governmental interest." *Fronterio v. Richardson,* 411 U.S. 677, 683, 93 S.Ct. 1764, 1768, 36 L.Ed.2d 583 (1973); *see, Weinberger v. Salfi, supra.* The issue, therefore, is whether the Secretary's special treatment of boards responsible for licensing nursing home administrators is *rationally related* to a valid public purpose. *San Antonio Ind. Sch. Dist. v. Rodriguez, supra,* 411 U.S. at 29–44, 93 S.Ct. 1278.

The public purpose or governmental interest sought to be advanced by 42 U.S.C. § 1396g and 45 CFR § 252.10 is the assurance of quality care for the elderly. After conducting extensive hearings Congress determined that the nursing home administrator was the key figure on whom success of a program for the aged depended. It was reasonable, therefore, for Congress to conclude that the licensing of nursing home administrators was essential to assure the quality of care provided in part through federal revenue.

Because of the nature of the profession, newly established and dependent upon many health-related disciplines, the licensing board for nursing home administrators was reasonably required to be free from control by any single profession. It was not unreasonable or arbitrary for Congress to require a licensing procedure for nursing home administrators that differs from the procedures required for licensing other professionals. *Geduldig v. Aiello,* 417 U.S. 484, 494–96, 94 S.Ct. 2485, 41 L.Ed.2d 256 (1974). Thus we conclude that the equal protection and due process arguments are without merit.

Likewise appellants' Tenth Amendment objections are without merit. Congress and the Secretary have not attempted to establish a federal licensing board in an attempt to prevent the

states from regulating nursing home administrators. Instead, the statute and regulation merely establish terms and conditions under which federal assistance will be provided to states that elect to participate in the nursing home component of the medicaid program. The only effect of the statute and regulation is to induce, but not require, a state to license its nursing home administrators in a specified manner; this inducement does not infringe upon any power reserved to the state under the Tenth Amendment. *See King v. Smith,* 392 U.S. 309, 316–17, 88 S.Ct. 2128, 20 L.Ed.2d 1118 (1968); *Ivanhoe Irrigation Dist. v. McCracken,* 357 U.S. 275, 295–96, 78 S.Ct. 1174, 2 L.Ed.2d 1313 (1958); *Oklahoma v. United States Civil Service Comm.,* 330 U.S. 127, 143–44, 67 S.Ct. 544, 91 L.Ed. 794 (1947). Once a state chooses to participate in a federally funded program, it must comply with federal standards.

We conclude that the Secretary did not exceed the authority vested in him by Congress by promulgating 45 CFR § 252.10(b)(3), and therefore affirm the judgment of the district court.