## PROFESSIONAL FACTORING SERVICE ASSOCIATION, a partnership, et al., Plaintiffs,

v.

## F. David MATHEWS, Secretary of the Department of Health, Education and Welfare of the United States of America, et al., Defendants.

### No. 76 Civ. 4002.

United States District Court,
S. D. New York.

Nov. 4, 1976.

Rubin, Seidman & Dochter, New York City, for plaintiffs, by Ivan M. Dochter, Joel L. Hecker, New York City.

Robert B. Fiske, Jr., U. S. Atty., S.D. N.Y., by Richard J. McCarthy, Asst. U. S. Atty., New York City, for defendant HEW.

Louis J. Lefkowitz, Atty. Gen., State of New York by Charles A. Bradley, III, New York City, for defendant New York State.

W. Bernard Richland, Corp. Counsel, City of New York, by Philip Agree, Michael J. McLoughlin, New York City, for defendant New York City.

## MEMORANDUM

FRANKEL, District Judge.

Plaintiffs, the Professional Factoring Service Association, several corporations directly involved in the business of financing accounts receivable for providers participating in the Medicaid program, and five providers of Medicaid services (an optometrist, a radiologist, a dentist, an ambulance service, and a pharmacy) who utilize factoring services, sue for declaratory and injunctive relief against the Secretary of Health, Education and Welfare ("HEW"), the New York State Social Services Commission, and the New York Social Services Commission. The charge is that a newly promulgated regulation, 45 C.F.R. § 249.31, which effectively prohibits the making of Medicaid payments to or through a factor, is invalid upon one or more of several grounds. Plaintiffs have moved for a preliminary injunction. For reasons that follow, the motion will be denied.

### I.

The Medicaid law as originally enacted in 1965, 42 U.S.C. § 1396 *et seq.,* and the accompanying regulations promulgated by the Secretary pursuant to authority granted him by 42 U.S.C. § 1302, did not in terms preclude the reassignment by providers of their claims for Medicaid payments. Under those original arrangements, providers often obtained financing and clerical assistance by reassigning Medicaid claims to factors, including the plaintiff factors in this case, who then submitted the claims and subsequently received payments in their own names. In 1972, Congress, finding that reassignments "have been a source of

incorrect and inflated claims for services and have created administrative problems with respect to determinations of reasonable charges and recovery of overpayments," S.Rep.No.92–1230, 92nd Cong., 2nd Sess. 205 (1972); H.R.Rep.No.92–231, 92nd Cong., 1st Sess. 104 (1971), U.S.Code Cong. & Admin.News 1972, p. 4989, amended the statute by adding to 42 U.S.C. § 1396a a new subdivision 32. The added provision says, with respect to state medicaid plans (which require the secretary's approval):

"that no payment under the plan for any care or service provided to an individual by a physician, dentist, or other individual practitioner shall be made to anyone other than such individual or such physician, dentist, or practitioner, except that payment may be made (A) to the employer of such physician, dentist, or practitioner, if such physician, dentist or practitioner is required as a condition of his employment to turn over his fee for such care or service to his employer, or (B) (where the care or service was provided in a hospital, clinic or other facility) to the facility in which the care or service was provided if there is a contractual arrangement between such physician, dentist, or practitioner and such facility under which such facility submits the bill for such care or service  *  *  *."

The legislative history of the amendment indicates that while Congress intended to prohibit reassignment of claims for Medicaid benefits, it did not intend to "preclude a physician or other person who provided the services  *  *  *  from having the payment mailed to anyone or any organization he wishes, but the payment would be to him in his own name." S.Rep.No.92–1230, supra at 205; H.R.Rep.No.92–231, supra at 104. To implement the new subdivision, the Secretary of HEW in April, 1974, promulgated 45 C.F.R. § 249.31, which basically echoed the language of the statute without providing any additional clarification.

Following the 1972 amendment, factors and providers devised a method for effectively continuing the prior financing arrangements while complying with the statute and regulations. Under the new scheme, claims were submitted by the factors in the providers' names and payments were made by checks payable to the providers. The checks were not mailed to the providers but directly to the factors, who were able to cash them because of powers of attorney given them by the providers. Federal, state, and local Medicaid officials initially acquiesced in, or at least tolerated, the new scheme. However, on February 4, 1976, the Secretary gave notice of a proposed regulation designed "to clarify and expand the regulations governing prohibition against reassignment of claims to payment" by explicitly prohibiting payments to or through a factor or his agent. 41 Fed. Reg. 5131 (1976). On August 27, 1976, the regulation as ultimately adopted by the Secretary was published in the Federal Register, to take effect on November 26, 1976. The regulation, assailed in this proceeding, provides as follows:

"§ 249.31 Prohibition against reassignment of claims to benefits.

"(a) *Meaning of terms.* For purposes of this section:

"(1) 'Facility' is a hospital or other institution which makes provision for furnishing health care services to inpatients.

"(2) 'Organized health care delivery system' is a public or private organization for delivering health services which may include, but is not limited to, a clinic or a group practice prepaid capitation plan.

"(3) 'Factor' is an organization, i. e., collection agency or service bureau, which, or an individual who, advances money to a provider for his accounts receivable which have been assigned or sold, or otherwise transferred, including transfer through the use of power of attorney, to such organization or individual for an added fee or a deduction of a portion of such accounts receivable.

"For purposes of this regulation, the term 'factor' does not include business representatives, such as billing agents or accounting firms, which render statements and receive payments in the name of the individual provider, provided that the compensation of such business repre-

sentative for such service is reasonably related to the cost of processing the billings and is not related on a percentage or other basis to the dollar amounts to be billed or collected.

"(b) *State plan requirements.* A State plan for medical assistance under title XIX of the Social Security Act must provide that (1) no payment under the plan for any care or service provided to a patient by a physician, dentist, other individual practitioner, or any other provider who is not reimbursed on a reasonable cost basis, shall be made to anyone other than such patient (who is eligible to receive such payments in accordance with § 249.32) or to such physician, dentist, practitioner, or any other provider who is not reimbursed on a reasonable cost basis. However, with respect to physicians, dentists, or other individual practitioners, direct payment may be made:

"(i) To the employer of the physician, dentist, or other practitioner if the practitioner is required as a condition of his employment to turn over his fees to his employer; or

"(ii) Where the care or service was provided in a facility, to the facility in which the care or service was provided, if there is a contractual arrangement between the practitioner and the facility whereby the facility submits the claim for reimbursement; or

"(iii) To a foundation, plan, or similar organization, including a health maintenance organization, which furnishes health care through an organized health care delivery system if there is a contractual arrangement between the organization and the person furnishing the service under which the organization bills or receives payments for such person's services; (2) payment under the plan for any care or service furnished to an individual by providers as specified in paragraph (b)(1) of this section shall not be made to or through a factor, either directly, or by virtue of a power of attorney given by the provider to the factor."

The 90-day period between promulgation and effective date was provided "to allow States to complete processing of claims already submitted." 41 Fed.Reg. 36208 (1976).

In challenging this regulation, plaintiffs make three basic claims: (1) that the regulation exceeds the Secretary's authority under the statute, (2) that the regulation is arbitrary and capricious, and (3) that the regulation violates plaintiffs' due process rights.

## II.

The Administrative Procedure Act requires the court to "hold unlawful and set aside agency action, findings and conclusions found to be * * * in excess of statutory jurisdiction, authority, or limitations, or short of statutory rights." 5 U.S.C. § 706(2)(C). The pertinent authority of the Secretary to promulgate regulations is in 42 U.S.C. § 1302, which empowers him to "make and publish such rules and regulations, not inconsistent with this chapter, as may be necessary to the efficient administration of the functions with which [he] is charged under this chapter." It is against this charter that the Secretary's action is to be appraised.

Under familiar principles, regulations like those in question are to be sustained if they are "reasonably related to the purposes of the enabling legislation." *Thorpe v. Housing Authority of the City of Durham,* 393 U.S. 268, 280–81, 89 S.Ct. 518, 525, 21 L.Ed.2d 474 (1968). See also *State of Fla. v. Mathews,* 526 F.2d 319, 323 (5th Cir. 1976); *Johnson's Professional Nursing Home v. Weinberger,* 490 F.2d 841, 844 (5th Cir. 1974); *Connecticut State Dept. of Public Welfare v. HEW,* 448 F.2d 209, 213 (2d Cir. 1971). Cf. *Mourning v. Family Publications Service,* 411 U.S. 356, 369, 93 S.Ct. 1652, 36 L.Ed.2d 318 (1973). The regulations meet this test when judged against both the text of the statute and its legislative history.

As for the statutory language, it literally and squarely announces the prohibition the Secretary has undertaken to enforce. It

says "that no payment * * * for any care or service provided to an individual by a physician, dentist, or other individual practitioner shall be made to anyone other than such individual or such physician, dentist, or practitioner * * *." 42 U.S.C. § 1396(a)(32).

Plaintiffs rely heavily on legislative history. But the history as a whole tends to refute rather than support their position. Virtually identical reports of the House Ways and Means Committee and Senate Finance Committee affirmed that reassignments to parties other than the providers comprised the mischief upon which the Congress was focusing in subdivision 32:

"Experience with this practice [reassignment of rights to benefits] under these programs shows that some physicians and other persons providing services reassign their rights to other organizations or groups under conditions whereby the organization or group submits claims and receives payment in its own name. Such reassignments have been a source of incorrect and inflated claims for services and have created administrative problems with respect to determinations of reasonable charges and recovery of overpayments. Fraudulent operations of collection agencies have been identified in medicaid. Substantial overpayments to many such organizations have been identified in the medicare program, one involving over a million dollars.

"Your committee's bill seeks to overcome these difficulties by prohibiting payment under these programs to anyone other than the patient, his physician, or other person who provided the service, unless the physician or other person is required as a condition of his employment to turn his fees over to his employer, or unless the physician or other person has an arrangement with the facility in which the services were provided under which the facility bills for the services. It is not the intent of your committee that this provision apply to payments to providers of services that are based on the reasonable cost of the services."

H.R.Rep.No.92–231, *supra* at 104, U.S.Code Cong. & Admin.News 1972, p. 250; see also S.Rep.No.92–1230, *supra* at 205, which differs in an immaterial phrase.

To sustain the arrangements now to be explicitly forbidden, plaintiffs invoke a seemingly inconsequential disclaimer in the Committee Reports that said a provider would still be allowed to have his "payment mailed to anyone or any other organization he wishes" so long as the payment was to the provider in his own name. H.R.Rep.No. 92–231, *supra* at 104, U.S.Code Cong. & Admin.News 1972, p. 250; S.Rep.No.92–1230, *supra* at 205. This, it is said, sanctifies the power-of-attorney arrangement plaintiffs seek to perpetuate. And it is true, as has been mentioned, that the Secretary tolerated this practice for four years or so. Nevertheless, the administrative view now under consideration is not only a permissible one; it would seem to the court the sounder position if it were for us to make an independent judgment. The substance of what Congress meant to forbid was being accomplished by the powers of attorney. The quoted Committee phrase about mailing "to anyone" is totally insufficient to sustain plaintiffs' theory as against the responsible administrator's judgment. The Secretary is on sounder ground when he construes the phrase in the history as having been designed merely to permit providers to have their checks mailed to a bank or savings and loan association, 41 Fed.Reg. 36,208 (1976), than are plaintiffs when they rely on it as the basis for circumventing the substantial purport of what Congress enacted.[1]

---

1. To show that the regulation is not authorized by the existing statute, plaintiffs refer to amending legislation introduced by Senator Talmadge, but not enacted, which would have directed the same result as that required by the regulation. It suffices to say that, as often happens, the proposed amendment appears to have been rejected because it was superfluous, not because its objective was voted down. After passing the Senate, the Talmadge proposal was deleted in the House because, as Representative Rodgers noted in the course of floor debate:

"HEW has already issued a regulation, effective November 26, 1976, which clarifies the existing ban on these factoring arrangements

In voluminous affidavits, plaintiffs undertake to show that clerical burdens and delays in payment necessitate resort to factors, and that the prohibition now to be enforced would make it impossible for many providers to continue rendering Medicaid service. This consequence would defeat broad statutory purposes, plaintiffs say—the purposes to give patients free choices and the right to "mainstream" medical care. The position is unpersuasive in both its factual and its legal premises.

The affidavits offered by plaintiffs to show the extent of delay in payment of Medicaid providers exaggerate the problem to some serious but not precisely measurable degree.[2] Counsel for the responsible City agency, at oral argument, assured the court that payments can and will be made to providers in a matter of less than a month, and the City, as is mentioned again below, is prepared to shoulder substantial responsibility upon that representation. (See note 3, *infra*.) But wholly apart from the uncertain matter of time required for payment, the court finds unpersuasive the thesis that only factoring and the use of powers of attorney (with the risks of fraud Congress could and did find to require its action) can serve as workable credit devices. Surely, the ingenuities of lenders dealing with professionals who provide medical and related services can contrive lending arrangements that are adequately protective of the creditors though they do not involve the delivery of potentially blank checks upon the Government by the borrowers. Further, the argument that factors earn their money primarily as clerical and record-keeping agencies is without substantial weight. That kind of service, quite distinct from financing, must be obtainable, whether from factors or others, without the dubious procedure upon which plaintiffs insist. And the questioned regulation makes this sensible point explicitly, sanctioning the use of "billing agents or accounting firms" to be paid for "processing the billings * * *." § 249.31(a)(3), quoted *supra*.

It remains possible, of course, if not highly probable, that the outlawing of plaintiffs' factoring device will eliminate providers who cannot function without it. How many such providers there are—and what kind they are—is at best a matter for speculation. Given the possible conflict of relevant policies and the uncertainties attending the problem, the Secretary was well within his powers when he heeded the Congressional concern about possible frauds or overbillings, leaving possible risks to be confronted and dealt with if and when they emerge.

### III.

The Secretary of HEW followed the notice and comment procedures prescribed by the Administrative Procedure Act, 5 U.S.C. § 553(c), in promulgating the challenged regulation. Plaintiffs argue that the resulting materials available to HEW, together with others the Secretary could consider, contained an insufficient factual basis for the challenged regulation, and urge that it should therefore be set aside as arbitrary and capricious. See *National Nutritional Foods Ass'n v. Weinberger*, 512 F.2d 688, 700 (2d Cir. 1975). The court has reviewed the administrative "record" tendered in support of the regulation, see *Camp v. Pitts*, 411 U.S. 138, 142, 93 S.Ct. 1241, 36 L.Ed.2d 106 (1973); *Citizens to Preserve Overton Park v. Volpe*, 401 U.S. 402, 419–20, 91 S.Ct. 814, 28 L.Ed.2d 136 (1971), including the official notices appearing in the Federal Register, the comments

---

to include situations where this is done through power of attorney. It is clear to the committee that HEW is fully within their authority in banning factoring using power of attorney under sections 1842(b)(5) and 1902(a)(32) of the Social Security Act, and that no further legislation is needed to support their action. It is for this reason that we do not believe this provision is needed." 122 Cong.Rec. H12184 (daily ed. Oct. 1, 1976).

2. The vendors' statements show only the date when the billed-for services were rendered and the date of the payment cycle. The date of submission of the invoices is conspicuously absent. No valid calculation of the delay in payment of claims can be made on the basis of such evidence.

received in response, the regulation in final form accompanied by the Secretary's explanation of its operation and justification, and documents in HEW files pertaining to the Department's belief that a new regulation was necessary. The totality, especially as buttressed by the Congressional findings on the underlying problem, refutes plaintiffs' arguments.

The record reveals that the disputed regulation was based primarily on the evidence of problems resulting from the factoring of Medicaid claims adduced and relied upon by Congress in adopting the 1972 amendment. 41 Fed.Reg. 36208 (1976). Plaintiffs concede that fraud by factors was demonstrated in the "notorious" (plaintiffs' word) Rugby Funding case in 1969–70; they deny, however, that such evidence is sufficient to warrant the Secretary's action. But it has never been supposed that Congress must have more than one dramatic instance to justify its legislation against the evil thus revealed; it would be anomalous to hold that the Secretary required more evidentiary justification to proceed against the precise problem perceived and defined by the Congress. Moreover, the HEW files placed before the court by plaintiffs show that experience in administering the program yielded additional indications of problems spawned by the reassignment of Medicaid claims to factors. For example, in various memoranda and investigative reports there were references to inflated and fabricated billings by factors, especially in Illinois, where reassignment of claims via powers of attorney was occurring on a large scale. The situation in Illinois highlighted the degree to which the Congressional ban on reassignment was being circumvented and was a key factor in the Department's deci-

sion to promulgate a clarifying regulation. The Department's experience in administering the program, see *National Nutritional Foods Ass'n v. Weinberger, supra* at 701 n. 11, when coupled with Congress's earlier findings, supplied a solid factual basis for the disputed regulation.

## IV.

■ The plaintiffs make arguments under the due process and equal protection clauses, the latter having now been substantially "incorporated" into the Fifth Amendment. These have been considered, as have all of plaintiffs' other contentions. For reasons amply treated in the Government's submissions, the arguments under this heading are found to lack substance.

## V.

■ It is familiar law that a preliminary injunction should be granted "only upon a clear showing of either (1) probable success on the merits *and* possible irreparable injury, or (2) sufficiently serious questions going to the merits to make them a fair ground for litigation *and* a balance of hardships tipping decidedly toward the party requesting the preliminary relief." *Sonesta Int'l Hotels Corp. v. Wellington Associates,* 483 F.2d 247, 250 (2d Cir. 1973) (emphasis in original). Assuming these standards suffice where a court is asked to block a regulatory program of national scope, defendants must prevail in this case. For reasons that have been stated, plaintiffs meet neither test. The court, with a qualification recorded in the margin, finds no basis for overturning or impeding the administrative judgment promulgated last August and scheduled to take effect later this month.[3]

---

**3.** As was developed in oral argument on October 28, the court and plaintiffs were led at the outset of this proceeding to understand that plaintiffs could safely continue their factoring practices (with use of powers of attorney) pending consideration of this motion. In successfully seeking an extension of time and resisting a temporary restraining order, government counsel appeared explicitly to give such assurance, or, at a minimum, to let the court's expression of the understanding go unques-

tioned. When on October 28 the United States Attorney advanced a different view, the court announced its informal ruling that it would be grossly inequitable, and therefore impermissible, to visit potentially large losses upon the plaintiffs for following a course into which they had been lulled by the prior expressions in the courtroom. At the same time, the court predicted on October 28 the overwhelming probability, based upon already extensive study, that the decision would go against the application

The motion for a preliminary injunction is denied.  So ordered.

for a preliminary injunction.  Thus forewarned, plaintiffs were told expressly, by the court as well as government counsel, that further factoring in the old way would expose them to risk of nonpayment after November 26.  In the course of this discussion, the Corporation Counsel, among his other contributions for which the court is grateful, gave assurance that plaintiffs' claims submitted by November 1 could and would be processed by November 26, so that risks of the kind plaintiffs feared would probably not materialize in any event.

Upon the exchanges and understandings thus recorded, the declaration of rights plaintiffs seek is granted to the extent that claims submitted by them, on or before November 1, 1976, in the form heretofore allowable are to be payable, whether reached for payment before or after November 26, without regard to the prohibitions in the new regulation.