Ralph D. Turlington Commissioner of Education Tallahassee
QUESTIONS:
1. When referring its visually impaired clients for initial eye examinations, is the Division of Blind Services required to refer them on an equal basis to optometrists and ophthalmologists?
2. If the answer to question 1 is in the negative, is the division permitted to use its discretion in determination to whom a client should be referred for an initial eye examination?
3. If, in his application for an initial eye examination, a client indicates his preference for either an optometrist or an ophthalmologist, may the division legally honor that request?
SUMMARY:
Since there is no provision of state law which clearly requires the Division of Blind Services of the Department of Education to refer its visually impaired clients to optometrists on an equal basis with other persons providing similar services, until legislatively or judicially construed otherwise, the division is not required to do so; those clients the division serves pursuant to the Federal Rehabilitation Act of 1973, as amended, have the right to choose whether they wish to be examined by an optometrist or an ophthalmologist but the division is otherwise free to exercise its reasonable discretion in referring other clients not served under the federal act for initial eye examinations; and the division may honor the request of a client not participating in the federally funded program to be examined by either an optometrist or ophthalmologist.
STATEMENT OF FACTS:
The Division of Blind Services of the Department of Education is charged by law with the responsibility of `provid[ing] for the examination and treatment of the blind, or those threatened with blindness . . . .' Section 413.011(1)(c), F. S. As I understand it, the division fulfills it obligations in this area primarily by participating in a federal grant program created pursuant to the Rehabilitation Act of 1973, as amended (29 U.S.C. § 701, etseq.). That federal act provides monetary grants to any state that has a currently approved State Plan for Vocational Rehabilitation Services, and that plan is required to address, among other things, the vocational rehabilitation needs of the visually handicapped. While I have been advised that Florida does have such an approved state plan, I also understand that the Division of Blind Services provides some examination and treatment services for the visually impaired which do not come under the Rehabilitation Act of 1973.
The visual services provided by the division are both evaluative and remedial. In this way they meet the division's twofold obligation to provide both for the examination and the treatment of the blind or those threatened with blindness. A client is initially referred for a diagnostic evaluation to determine program eligibility and to provide a prognosis for future treatment. Those clients who are found to be eligible are then referred for treatment. You indicate that the division has adopted a policy of referring each of its visually impaired or deficient clients to an ophthalmologist for an initial eye examination regardless of whether medical treatment by such a physician is ultimately required. The justification for this referral policy, as I understand it, is that the division has determined that approximately 75 percent of its referral clients eventually are found to suffer from eye pathologies which can be treated only by a medical doctor specializing in ophthalmology. A client who is initially referred to an optometrist for examination would then have to be sent to an ophthalmologist for treatment. You indicate that an ophthalmologist would conduct his own examination before proceeding with treatment, thereby increasing program costs. At the present time, no initial referrals for visual examinations are being made to optometrists.
An ophthalmologist is a physician specializing in the study and treatment of defects and diseases of the eye. Webster's Third NewInternational Dictionary (1966 ed.). An optometrist, on the other hand, is a person licensed to practice optometry in this state. Section 463.002(3), F. S. According to s. 463.002(4), optometry means:
 . . . the diagnosis of the human eye and its appendages; the employment of any objective or subjective means of methods for the purpose of determining the refrative powers of the human eyes, or any visual, muscular, neurological, or anatomic anomalies of the human eyes and their appendages; and the prescribing and employment of lenses, prisms, frames, mountings, contact lenses, orthoptic exercises, light frequencies, and any other means or methods for the correction, remedy, or relief of any insufficiencies or abnormal conditions of the human eyes and their appendages.
AS TO QUESTION 1:
The first question you pose is a direct result of a recent demand made of the Division of Blind Services by the Florida Optometric Association. As I understand it, the association feels that the division, in refusing to refer clients to optometrists for initial eye examinations, is discriminating against members of its ranks in contradiction of the spirit, of not the letter, of s. 463.013, F. S., which provides in pertinent part that:
 Any agency of the state . . . administering . . . health service under the laws of the state shall accept the services of optometrists licensed in this state for the purposes of diagnosing and correcting any and all visual, muscular, neurological, and anatomic anomalies of the human eyes and their appendages of any persons under the jurisdiction of said agency . . . on the same basis and on a parity with any other person authorized by law to render similar professional service, when such services are needed . . . .
Ordinarily, administrative agencies are afforded a great deal of discretion in the exercise of their powers. When, as here, a statute confers a general grant of power unaccompanied by definite direction as to how that power or authority is to exercised, the implication is that the agency has a right to employ the means and the methods necessary to comply with the statute. See s.413.011(1)(c), F. S., which merely provides without elaboration that the division is to provide for the examination and treatment of the blind or those threatened with blindness. This is not to say, however, that the division is free to exercise an unbridled discretion. That discretion which an administrative agency is entitled to exercise must be reasonable and is required to be exercised according to established rules of law. It cannot be exercised arbitrarily or capriciously. See 1 Fla. Jur.2dAdministrative Law, pp. 591-593. Ordinarily and withoutconsideration of any of the provisions of ch. 463, F. S., since s.413.011(1)(c) requires only that the division provide for the examination and treatment of the blind and those threatened with blindness and does not specify the method or the means the agency is to employ in meeting this responsibility, the division would be free to employ any reasonable means available.
The question to be faced here, however, is whether s. 463.013, F. S., acts to limit the division's discretionary power by requiring it to refer its clients to ophthalmologists and optometrists on an equal basis. The operative language of s. 463.013 states that `any agency of the state . . . administering . . . health services . . . shall accept the services of optometrists . . . on the same basis and on a parity with any other person authorized by law to render similar professional service . . . .' (Emphasis supplied.) What this provision means, however, is far from clear. By its terms, it does not say that the division is required to refer its clients to optometrists on any basis but only that it must accept the services of optometrists on the same basis as those of any other person who is capable of providing equivalent services. In its ordinary sense, the word `accept' means to take or receive something when offered. Webster's Third New InternationalDictionary (1966 ed.), p. 10. In the present context, however, the word `refer' means to send or direct for treatment or examination. Webster's, supra, p. 1907. Consequently, on its face and in its commonly understood meaning, s. 463.013 does not require the division to refer its clients to optometrists at all.
My research indicates that this language was first added to the optometry statute in 1939. See s. 12, ch. 19031, 1939, Laws of Florida. The title to that act described it as `making (optometrists') services available on a parity with those of any other profession performing similar services.' (Emphasis supplied.) In accordance with the provisions of the Regulatory Reform Act of 1976 (see s. 3, ch. 76-168, Laws of Florida, as amended by s. 1, ch. 77-457, Laws of Florida), the Florida optometry law was repealed effective July 1, 1979. The present optometry law was enacted during the 1979 session, and s. 463.013, F. S., thereof is virtually identical to the provision originally enacted in 1939. See ch. 79-194, Laws of Florida. The title to the 1979 legislation merely states that it is an act `providing for optometric services to public agencies.' In my opinion, the legislative intent as reflected in the title does not indicate that the Legislature meant to require state agencies which are providing visual services to refer their clients to and pay optometrists on an equal basis with others providing similar services.
The title certainly conveys no notice of any such legislative intent or purpose, and I apprehend that, had the Legislature purposed any such mandatory requirement or the imposition of any
mandatory duty in that regard on the Division of Blind Services or any other state or local governmental agency, it would have done so clearly and unequivocally. Cf. State ex rel. Housing Auth. of Plant City v. Kirk, 231 So.2d 522, 523-524 (Fla. 1970). In any event, I am without any authority to write into the statutes any such mandatory duty or requirement. In addition, while the language which is now found in s. 463.013, F. S., has been part of the optometry statute for more than 40 years, my research has not uncovered a single court decision or opinion of this office which has attempted to construe what is meant by the phrase `shall accept the services.' I have found two other states, South Carolina and Washington, which use similar language in their optometry statutes. See S.C. Code s. 40-37-220 and Wash.Rev. Code Ann. s. 18.53.170. Again, however, I have not found any judicial decisions construing the phrase `shall accept the services.'
Consequently, in view of the fact that the statutory language is not clear and since I am without benefit of any explicit enunciation of the legislative intent or judicial construction, I cannot say that the division is required by s. 463.013, F. S., to refer its clients on an equal basis to optometrists and opthalmologists for initial eye examinations.
AS TO QUESTION 2:
In view of the answer given to question 1, it is appropriate for me to answer your second question. As I explained in the answer to your first question, when not restrained by law, an administrative agency is ordinarily afforded a great deal of discretion to determine the best way to carry out its assigned responsibilities. However, that discretion must be exercised in a reasonable manner and may not be exercised arbitrarily or capriciously. In this regard, the Legislature has recognized that optometrists are capable of diagnosing the human eye and its appendages and that they may employ `any objective or subjective means or methods for the purpose of determining . . . any visual, muscular, neurological, or anatomic anomalies of the human eyes and their appendages. . . .' (See s. 463.002(4), F. S.) What this means is that the determination as to whethr optometrists are capable of performing certain diagnoses and examinations has already been made by the Legislature and, therefore, that the division may not exercise any discretion in this area. For the division to refuse to employ optometrists on the sole ground that they are not capable of providing services which the Legislature has determined they can provide would clearly be unreasonable.
The division's discretion to determine to whom a client should be referred for an initial eye examination has also been displaced in those instances when the division is providing services pursuant to the Federal Rehabilitation Act of 1973. Those services which the division provides pursuant to the federal act must be delivered in accordance with the directions of that act. See State of Florida v. Mathews, 526 F.2d 319 (5th Cir. 1976), holding that, once a state chooses to participate in a federally funded program, it must comply with the federal standards governing that program. In this regard 29 U.S.C. § 723 provides:
 (a) Vocational rehabilitation services provided under this chapter are any goods or services necessary to render a handicapped individual employable, included but not limited to the following:
 (4) physical and mental restoration services, including, but not limited to, . . . (D) eyeglasses and visual services as prescribed by a physician skilled in the diseases of the eye or by an optometrist, whichever the individual may select . . . . (Emphasis supplied.)
The federal regulations adopted pursuant to the rehabilitation act also recognize that the individual client has the right to choose whether he wishes to be seen by an opthalmologist or an optometrist. For example, in 45 C.F.R. s. 1361.35(c) (1977 ed.), it is provided that `[t]he State plan shall provide that in all cases of visual impairment, an evaluation of visual loss will be provided by a physician skilled in the diseases of the eye or by an optometrist, whichever the individual may select . . . .' (Emphasis supplied.) In addition, s. 1521.07 of the Vocational Rehabilitation Manual published by the U.S. Department of Education (formerly the Department of Health, Education, and Welfare) suggests that `agency policy provide for free choice bythe client of physicians skilled in diseases of the eye or
optometrists . . . .' (Emphasis supplied.) Moreover, s. 1.1 of Florida's Plan for Vocational Rehabilitation Services expressly states:
 As a condition to receipt of Federal funds under Title I of the Rehabilitation Act of 1973, as amended, for vocational rehabilitation services and for innovation and expansion grant projects, the Department of Education submits this State Plan for vocational rehabilitation services and agrees to administer the program in accordance with this State Plan, the [Federal] Act, and all applicable regulations, policies and procedures established by the Secretary. (Emphasis supplied.)
Finally, in s. 7.4 of the state plan, the State Department of Education agreed to provide a thorough diagnostic study to determine the nature and scope of services needed by the individuals participating in the program and specifically agreed that the diagnostic study would include the special examination and evaluations required by 45 C.F.R. s. 1361.35(c). That provision, set out above, grants the client the right to choose whether to be examined by an optometrist or an ophthalmologist.
The answer to your second question, then, is that, when it is providing visual services under the Federal Rehabilitation Act of 1973, as amended, the division must permit its clients to choose to whom they wish to be referred for an initial diagnostic eye examination; however, when it is providing for other types of visual services, the division may exercise a reasonable discretion in deciding to whom to refer its clients, but it should not arbitrarily refuse to refer them to optometrists for those services which the Legislature has recognized optometrists as capable of providing.
AS TO QUESTION 3:
As I indicated in the answer to question 2, the Federal Rehabilitation Act of 1973 grnats the client the right to choose to whom he wishes to be referred for visual services. When the division is providing visual services pursuant to this federal act, it must permit the client to choose whether he wishes to be examined by an optometrist or an ophthalmologist and then refer the client to whichever he prefers. I can see no reason why the division could not honor a similar request made by a client not participating in the federal program. So long as the individual for whom the client indicates a preference is capable of providing the services which the division deems essential to meet its statutory obligations, there is nothing in the law which in my opinion would prevent the honoring of such a request.
Prepared by: Percy W. Mallison, Jr., Assistant Attorney General