AMERICAN FEDERATION OF GOVERNMENT EMPLOYEES, AFL–CIO et al., Plaintiffs-Appellants,

v.

John C. STETSON (Successor), Secretary of the Air Force et al., Defendants-Appellees.

No. 79–1065.

United States Court of Appeals, Fifth Circuit.

March 25, 1981.

James R. Rosa, Acting Gen. Counsel, Am. Fed. of Gov't Emp., Washington, D. C., C. Paul Barker, New Orleans, La., for plaintiffs-appellants.

Robert S. Greenspan, Atty., Appellate Staff, Dept. of Justice, Civil Div., Linda Jan S. Pack, Atty., Washington, D. C., for defendants-appellees.

Before TJOFLAT, POLITZ and HATCHETT, Circuit Judges.

POLITZ, Circuit Judge:

The individual plaintiffs were formerly civil service custodial workers at Randolph Air Force Base, Texas, with the American Federation of Government Employees, AFL–CIO, as their exclusive bargaining representative. In May 1973, plaintiffs were notified that as an economy measure, effective August 1973 the Air Force intended to "contract out" Randolph's custodial services. Eighty-nine custodial jobs were abolished. Seventy of the displaced employees were reassigned to other federal jobs; the remaining nineteen were separated from the Air Force via a reduction in force (RIF). After a premature judicial proceeding, these nineteen sought relief from the Civil Service Commission (CSC) and, after exhausting available administrative remedies, instituted this litigation. They seek an injunction against the RIF and a judgment declaring the custodial services contract between the Air Force and the independent contractor invalid. The district court agreed with the CSC, granting defendants' motion for summary judgment upon findings that there were no due process violations and the plaintiffs have no standing to challenge the custodial services contract. We affirm.

## Service Contracts and RIFs

■ The Air Force has authority to contract with private business for support services.[1] RIFs are statutorily sanctioned; the mechanism includes general guidelines for retention preference when some but not all employees in a given group are separated from service.[2] The details of RIF method-

---

1. 10 U.S.C. § 2303(a) provides:

    This chapter applies to the purchase, and contract to purchase, by any of the following agencies, for its use or otherwise, of all property named in subsection (b), and all services, for which payment is to be made from appropriated funds:
    (1) The Department of the Army.
    (2) The Department of the Navy.
    (3) The Department of the Air Force.
    (4) The Coast Guard.
    (5) The National Aeronautics and Space Administration.

2. 5 U.S.C. § 3502(a) provides in part:

    The Office of Personnel Management shall prescribe regulations for the release of competing employees in a reduction in force which give due effect to—
    (1) tenure of employment;
    (2) military preference, subject to section 3501(a)(3) of this title;
    (3) length of service; and
    (4) efficiency of performance ratings.

ology are contained in the Code of Federal Regulations.[3]

Appellants strenuously assert that the RIF, albeit authorized in some instances, was not the proper way to terminate their employment because 5 C.F.R. § 351.201(a) limits the removal of federal employees to situations where there is a lack of work or shortage of funds. We do not read the language of this regulation so restrictively, for it provides:

> Each agency shall follow this part when it releases a competing employee from his/her competitive level by separation, demotion, furlough for more than 30 days, or reassignment requiring displacement, when the release is required because of lack of work, shortage of funds, reorganization, reclassification due to change in duties, or the exercise of reemployment rights or restoration rights.

The regulation refers to reorganization which is defined in 5 C.F.R. § 351.203(g) as "the planned elimination, addition, or redistribution of functions or duties in an organization." The contracting out of custodial services at Randolph was a "planned elimination" of that function by in-house personnel. The RIF mechanism was available to the Air Force in this situation.

Appellants next contend that even if use of the RIF was appropriate per se, the procedure followed in this case was improper. We must examine this contention against the backdrop of the operative facts. The Air Force's decision to enter into a private contract for custodial services was precipitated by Revised Circular A–76 of the Office of Management and Budget (OMB). OMB, as part of its continuing effort to promote economy in government, encouraged all responsive governmental units to substitute private contractors for government workers whenever and wherever like quality services could be secured at a lower cost.

Private contractors must be hired in compliance with the Service Contract Act, 41 U.S.C. §§ 351 et seq. This Act supplies the basis for appellants' complaint that the private custodial contract at issue is illegal, a charge which serves as the linchpin for appellants' contention that their separation by RIF, as a consequence of their work being assumed by the private employees, is impermissible. Under § 351(a)(1),[4] every contract in excess of $2,500 must contain a provision specifying the minimum wage to be paid contract employees. The Secretary of Labor is to make this wage-rate determination after analyzing the prevailing wage rate in the locality. The private bids submitted, which must be based upon payment of at least this determined minimum wage, are then compared to the cost of retaining in-house civil service employees.[5] After this comparison was completed in the instant case, it was determined that a private contract for custodial services would cost less at Randolph. Thus the decision was reached to make the RIF and execute the private contract.

---

**3.** 5 C.F.R. §§ 351.201–.1001.

**4.** 41 U.S.C. § 351(a) provides:
Every contract (and any bid specification therefor) entered into by the United States or the District of Columbia in excess of $2,500, except as provided in section 7 of this Act, whether negotiated or advertised, the principal purpose of which is to furnish services in the United States through the use of service employees, shall contain the following:
(1) A provision specifying the minimum monetary wages to be paid the various classes of service employees in the performance of the contract or any subcontract thereunder, as determined by the Secretary, or his authorized representative, in accordance with prevailing rates for such employees in the locality, or where a collective-bargaining agreement covers any such service employees, in accordance with the rates for such employees provided for in such agreement, including prospective wage increases provided for in such agreement as a result of arm's-length negotiations. In no case shall such wages be lower than the minimum specified in subsection (b).

**5.** In response to the realization that depressed wages were often paid to service contract employees because they were not covered by the Fair Labor Standards Act or state minimum wage laws, the Service Contract Act was passed to guarantee these workers a minimum wage. *Am. Fed. of Government Emp., Local 1668 v. Dunn*, 561 F.2d 1310 (9th Cir. 1977).

Appellants challenge the Department of Labor's specification of the minimum monetary wage of $1.80 per hour as inordinately low. They insist that this rate was not determined in accordance with the requirements of the Service Contract Act and, therefore, the contract for custodial work based on this rate is invalid. Based on this asserted invalidity of the private custodial services contract, appellants contend that the elimination of their jobs was improper. The CSC and the district court held that appellants have no standing to contest the establishment of the wage-rate for the private employees. The district court noted the anomaly of allowing appellants to assert the "rights" of the private employees in such a manner as to invalidate the employment contract, put the private employees out of work and return those jobs to appellants. Appellants ingeniously argue that they have a property interest in continued employment, which they are being denied without due process because they are not allowed to challenge the administrative action (the wage-rate determination) which led to the abolition of their jobs.

### Employment Due Process

■ An employee may claim substantive and procedural due process rights upon discharge when the employee has a property interest in continued employment. *Bishop v. Wood*, 426 U.S. 341, 96 S.Ct. 2074, 48 L.Ed.2d 684 (1976); *Thompson v. Bass*, 616 F.2d 1259 (5th Cir. 1980); *Megill v. Board of Regents*, 541 F.2d 1073 (5th Cir. 1976). To have a protectible property interest in the continuation of employment the employee must have a legitimate claim of entitlement. That entitlement is not created by the due process clause; if it exists it is created either by contract or by federal, state or local law. *Board of Regents v. Roth*, 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972). The interest created need not necessarily be as broad as the Constitution would permit. The creative mechanism, contract or law, may limit the property interest and remove some, perhaps all, of the due process safeguards. *Bishop v. Wood, supra.*

■ Evaluation of the due process rights of appellants requires a review of the applicable federal statutes and regulations. The CSC has the responsibility of monitoring RIFs with the resultant release of employees. The Director, Office of Personnel Management, is given the authority by 5 C.F.R. § 5.1, to promulgate the regulations, cited *infra*, which detail the rights of federal employees subject to a RIF. In this case the CSC examined the RIF at issue and found it in accord with controlling law and regulations. We recognize and acknowledge the expertise of the CSC and accord substantial deference to its factual findings and legal conclusions.

We conclude that the guidelines for the order of release of competing employees contained in 5 U.S.C. § 3502 established rights with regard to retention when some but not all employees are released. This section creates rights as between employees, it does not create a statutory right to continued employment if the decision is made to terminate some or all employees in a given group. The government must be free to operate the vast business of government, maximizing economies wherever possible, provided it does so without violating the rights of its employees. The range of operation and the flexibility or rigidity surrounding employment practices are matters best addressed to the legislative and executive branches of government. In this instance the Congress and the Executive created jobs and established a mechanism for review and refinement of job needs, including the abolishment of certain jobs if the services could be secured at a lower cost under private contract. The Constitution does not proscribe or inhibit this laudable goal of economy in governmental operation or ordain that this goal may not be pursued as was done at Randolph. We agree with the CSC and the district court that there has been no violation of appellants' rights to either substantive or procedural due process.

### Standing

■ This leads, then, to consideration of the issue which might more appropriately

have been given threshold consideration, *i. e.*, appellants' contention that they have standing to contest the wage-rate determination by the Department of Labor. We are guided by the standing test articulated by the Supreme Court in *Sierra Club v. Morton*, 405 U.S. 727, 733, 92 S.Ct. 1361, 1365, 31 L.Ed.2d 636 (1972), which requires that a plaintiff establish an "injury in fact" and that he fall "arguably within the zone of interests to be protected or regulated" by the statute relied on. The appellants have suffered an injury in fact, but as the district court observed, they fail to meet the second requirement. We agree with the district judge that it would be anomalous indeed to permit appellants to assert the Service Contract Act rights of the employees of the private contractor even unto the loss of the latter's employment. Not only are the rights of the federal employees outside "the zone of interest," the interests of the federal employees are antithetical to those of the private employees. It was on behalf of the latter that the Service Contract Act was passed. We are in full accord with the conclusions of our colleagues of the Ninth Circuit in a case which is factually and legally identical to that before us. *Am. Fed. of Government Emp., Local 1668 v. Dunn*, 561 F.2d 1310 (9th Cir. 1977). The Ninth Circuit found that the employees of contractors performing services for the government are the beneficiaries of the Service Contract Act, and that federal employees who are discharged in a RIF have no standing to challenge the wage-rate determination required by the Act. We fully agree and so hold.

The decision of the district court is AFFIRMED.