**J. H. RUTTER REX MANUFACTURING CO., INC.**

v.

**UNITED STATES of America, Harold Brown, Secretary of Defense, Lt. General Gerald J. Post, Director, Defense Logistics Agency, General Emmett Bowers, Commander, Defense Personnel Support Center, Frank L. Coccia, Director, Clothing and Textiles Directorate, Defense Personnel Support Center, Defendants.**

**DeRossi & Son Company, Intervenor.**

**Civ. A. No. 80–2865.**

United States District Court, E. D. Louisiana.

Feb. 19, 1982.

Daniel Lund, New Orleans, La., for plaintiff.

Elizabeth A. O'Connell, Asst. U. S. Atty., New Orleans, La., June Rose Carbone, Sandra M. Schraibman, Attys., Dept. of Justice, Washington, D. C., for defendants.

Phillip A. Wittmann, New Orleans, La., Dennis J. Riley, for defendant-intervenor.

1. Defendant-intervenor's motion to dismiss will be treated as a motion for summary judgment as well, since matters outside the pleadings have been taken into consideration in deciding the motion.

2. In its plants in New Orleans and Franklinton, Louisiana, and Columbia, Mississippi, plaintiff

CASSIBRY, District Judge:

## MOTIONS FOR SUMMARY JUDGMENT

This action is before the court on cross-motions of the parties for summary judgment.[1] At issue is the legality of the Department of Defense ("DOD") regulations governing the set-aside of certain military procurement contracts for small business concerns, codified at 32 C.F.R. Part 7. Plaintiff, a manufacturer of military clothing, ineligible for the program because of its size,[2] asks the court to declare the program invalid and enjoin its further implementation by the Department of Defense. Plaintiff claims that the program results in the award of more than a "fair proportion" of government contracts to small businesses in the clothing industry, in violation of the due process clause of the Fifth Amendment to the U. S. Constitution, the Administrative Procedures Act, 5 U.S.C. §§ 552(a)(1)(E) (1976) and the "fair proportion" language of the Armed Forces Procurement Act, 10 U.S.C. § 2301 et seq. (1976), and the Small Business Act, 15 U.S.C. § 631 et seq. (1976).

Defendants, the Secretary of Defense, the Director of the Defense Logistics Agency ("DLA"), the Commander of the Defense Personnel Support Center ("DPSC") and the Director of the Clothing and Textiles Directorate of the DPSC, are responsible for clothing procurement for the military services and for uniformed civilian personnel of the Department of Defense ("DOD"). Defendant-intervenor is a qualified small business clothing manufacturer with a direct interest in the continuation of the set-aside program.

Upon careful consideration of the voluminous pleadings and exhibits filed in this action, as well as the argument of counsel, and there being no material fact in issue,

employed roughly 1500 people during periods of full production. A small business concern as here pertinent is defined by Small Business Administration regulations as one which employs fewer than 500 persons. 13 C.F.R. § 121.3–8 and § 121-Schedule A.

the court grants the defendants' and defendant-intervenor's motions for summary judgment.

## I. BACKGROUND

In 1947, Congress passed the Armed Forces Procurement Act, declaring that: "It is the policy of Congress that a fair proportion of the purchases and contracts under this chapter be placed with small business concerns." 10 U.S.C. § 2301 (1976). That language was extended to a "fair proportion" of total government contracts with the Federal Property and Administrative Services Act of 1949, 41 U.S.C. § 252(b) (1976) and the Small Business Acts of 1953 and 1958, 15 U.S.C. § 644 (1976). The Small Business Act requires that government agencies award procurement contracts to small business concerns when the award is determined

(1) to be in the interest of maintaining or mobilizing the Nation's full productive capacity, (2) to be in the interest of war or national defense programs, (3) to be in the interest of assuring that a fair proportion of the total purchases and contracts for property and services for the Government are placed with small-business concerns, or (4) to be in the interest of assuring that a fair proportion of the total sales of Government property be made to small-business concerns ...[3]

**3.** 15 U.S.C. § 644(a) (1976).

**4.** These regulations have been incorporated with only slight modification into the Defense Acquisition Regulations, 32 C.F.R. Part 7, which now govern military procurement.

**5.** 32 C.F.R. § 1–706.5 provides:

(a) The entire amount of a contract shall be set aside for exclusive small business participation ... if the contracting officer determines that there is a reasonable expectation that (i) offers will be obtained from at least two responsible small business concerns offering the products of different small business concerns and (ii) awards will be made at reasonable prices.... Total set asides shall not be made unless such a reasonable expectation exists. Although past acquisition history of the item or similar items is always important, it is not the only factor which should be considered in determining whether a reasonable expectation exists.

32 C.F.R. § 1–706.1(f) provides:

The Department of Defense adopted small business regulations in 1957 to implement the Armed Forces Procurement Act. Part 7 of the Armed Forces Procurement Regulations[4] echoed the "fair proportion" language of the statute:

1–702(a) It is the policy of the Department of Defense to place a fair proportion of its total purchases and contracts for supplies, research and development, and services ... with small business concerns.

To implement this long-standing policy, the regulations provide that the entire amount of a contract shall be set aside for exclusive small business participation if the contracting officer finds certain conditions present. This "set-aside" program operates to aid small business whenever there is a reasonable expectation that at least two responsible small businesses will make offers, and that awards of contracts will be made at reasonable prices. Once a contract has been awarded in the set-aside program, all future requirements by the purchasing office for that particular product or service are subject to a "repetitive set-aside", as long as the same reasonable expectations are present.[5] The fact that a large percentage of previous acquisitions of the item has been placed with small businesses, or that

Once a product or service has been acquired successfully by a contracting office on the basis of a small business set-aside, all future requirements of that office for that particular product or service not subject to simplified small purchase procedures shall be acquired on the basis of a repetitive set-aside. This procedure will be followed unless the contracting officer determines that there is not a reasonable expectation that (i) offers will be obtained from at least two responsible small business concerns offering the products of different small business concerns and (ii) awards will be made at reasonable prices. Section 1–706.1(f) was added effective July 27, 1979. In addition, section 1–706.5(a)(i) was changed in 1979 from "... offers will be obtained from *a sufficient number of* responsible..." to read, "... offers will be obtained from *at least two* responsible...". Plaintiff attributes its loss of business with the government to these changes. Defendants maintain that the changes were not consequential.

small businesses are considered to be already receiving a fair proportion of total contracts, is irrelevant to the decision to set aside a particular contract.[6]

Plaintiff urges that the program outlined by the above regulations, by requiring repetitive set-asides and by providing that bids from only two small businesses will validate the set-aside of a contract, does not satisfy the statutory mandate for "free and full" competition embodied in the Armed Forces Procurement Act[7] and the Small Business Act.[8]

## II. STANDING

Before analyzing plaintiff's claims for declaratory and injunctive relief, defendants' argument that plaintiff lacks standing must be addressed. Defendants' earlier motion to dismiss for lack of standing was denied by minute entry on March 13, 1981. The government defendants and defendant-intervenor urge the court to reconsider its prior ruling in the motions now before the court. Although as a general rule courts should not reconsider issues which have already been decided in an action, *Messenger v. Anderson*, 225 U.S. 436, 32 S.Ct. 739, 56 L.Ed. 1152 (1912), prior rulings have no res judicata effect and may be reconsidered in light of newly announced legal doctrine. *Industrial Workers of the World v. Clark*,

385 F.2d 687 (D.C.Cir.1967), *cert. denied*, 390 U.S. 948, 88 S.Ct. 1036, 19 L.Ed.2d 1138 (1968). *See also United States v. Horton*, 622 F.2d 144, 148 (5th Cir. 1980); *Wm. G. Roe & Company v. Armour & Company*, 414 F.2d 862 (5th Cir. 1969). On March 25, 1981, the District of Columbia Court of Appeals issued a thoughtful analysis of the problem of standing in the government procurement arena, *Control Data Corporation v. Baldridge*, 655 F.2d 283, D.C.Cir., which this court finds instructive. After careful reexamination of the problem of standing under the facts presented by this case, I find again that plaintiff has standing to invoke judicial review of the DOD regulations at issue here.

Under Fifth Circuit jurisprudence, there is a three-part test for standing to contest the validity of agency actions: 1) the challenged action must result in injury in fact to the plaintiff; 2) the interest invaded must be arguably within the zone of interest to be protected by the statute or constitutional guarantee in question; and 3) there must be no statutory prohibition of judicial review. *Suntex Dairy v. Bergland*, 591 F.2d 1063, 1066 (5th Cir. 1979); *Baker v. Bell*, 630 F.2d 1046, 1050 (5th Cir. 1980).

### A. Injury in Fact

Plaintiff's stake in the outcome of this controversy is sufficiently direct and con-

---

**6.** 1–7061(j) provides:
None of the following is, in itself, sufficient cause for not making a set-aside:
(i) a large percentage of previous acquisitions of the item has been placed with small business concerns;

\*　\*　\*　\*　\*　\*

(vi) small business concerns are considered to be receiving a fair proportion of total contracts for supplies or services; . . .

**7.** 10 U.S.C. § 2305(a) provides:
Whenever formal advertising is required under section 2304 of this title, the advertisement shall be made a sufficient time before the purchase or contract. The specifications and invitations for bids shall permit such free and full competition as is consistent with the procurement of the property and services needed by the agency concerned. . . .

**8.** 15 U.S.C. § 631(a) provides:
The essence of the American economic system of private enterprise is free competition. Only through full and free competition can

free markets, free entry into business, and opportunities for the expression and growth of personal initiative and individual judgment be assured. The preservation and expansion of such competition is basic not only to the economic well-being but to the security of this Nation. Such security and well-being cannot be realized unless the actual and potential capacity of small business is encouraged and developed. It is the declared policy of the Congress that the Government should aid, counsel, assist, and protect, insofar as is possible, the interests of small-business concerns in order to preserve free competitive enterprise, to insure that a fair proportion of the total purchases and contracts or subcontracts for property and services for the Government . . . be placed with small-business enterprises, to insure that a fair proportion of the total sales of Government property be made to such enterprises, and to maintain and strengthen the over-all economy of the Nation.

crete to satisfy the constitutionally-compelled injury in fact requirement for standing. See *Flast v. Cohen*, 392 U.S. 83, 95, 88 S.Ct. 1942, 1949, 20 L.Ed.2d 947 (1968); *Duke Power Co. v. Caroline Environmental Study Group, Inc.*, 438 U.S. 59, 73, 98 S.Ct. 2620, 2630, 57 L.Ed.2d 595 (1978). Plaintiff alleges that the percentage of DPSC contracts set aside for small business has effectively precluded it from participating in bidding for the type of government procurement contracts for which it successfully bid over the past twenty years or more. Plaintiff claims injury from plant closings and employee lay-offs which allegedly result directly from the implementation of DOD small business regulations and goal practices. Causation of plaintiff's injuries, while not clear-cut, is not "merely speculative". *See Warth v. Seldin*, 422 U.S. 490, 507, 95 S.Ct. 2197, 2209, 45 L.Ed.2d 343 (1975). Courts have held that an allegation of economic harm to a competition interest was sufficient to satisfy the injury in fact requirement of standing. *Marshall and Ilsley Corporation v. Heimann*, 652 F.2d 685, 692–93 (7th Cir. 1981). I have no serious doubt that plaintiff's loss of government business was caused at least in part by the government's small business program.

In addition, plaintiff meets the constitutional requirement for standing because its claimed injury is "likely to be redressed by a favorable decision." *Gladstone Realtors v. Village of Bellwood*, 441 U.S. 91, 100, 99 S.Ct. 1601, 1608, 60 L.Ed.2d 66 (1979), citing *Simon v. Eastern Kentucky Welfare Rights Organization*, 426 U.S. 26, 45, 96 S.Ct. 1917, 1927, 48 L.Ed.2d 450 (1976); *Village of Arlington Heights v. Metropolitan Housing Development*, 429 U.S. 252, 262, 97 S.Ct. 555, 561, 50 L.Ed.2d 450 (1977). Plaintiff satisfies this court that the competitive harm alleged would be remedied by the requested relief. If this court were to issue declaratory or injunctive relief against the operation of the small business set-aside program where it operated to effectively exclude plaintiff from bidding on any contract, plaintiff's share of DOD contract awards would most likely rise.

Injury in fact has been found in cases involving both "disappointed bidders", who actually bid on a given contract, *see, e.g., Kinnett Dairies, Inc. v. Farrow*, 580 F.2d 1260 (5th Cir. 1978); *Hayes International Corp. v. McLucas*, 509 F.2d 247 (5th Cir.), *cert. denied*, 423 U.S. 864, 96 S.Ct. 123, 46 L.Ed.2d 92 (1975), and "frustrated bidders" who are precluded from continuing their relationship as a government supplier by a change in regulations, *see, e.g., Ballerina Pen Co. v. Kunzig*, 433 F.2d 1204 (D.C.Cir. 1970), *cert. dismissed*, 401 U.S. 950, 91 S.Ct. 1186, 28 L.Ed.2d 234 (1971); *Ray Baillie Trash Hauling, Inc. v. Kleppe*, 477 F.2d 696 (5th Cir. 1973); *cert. denied*, 415 U.S. 914, 94 S.Ct. 1410, 39 L.Ed.2d 468 (1974); *Control Data Corporation v. Baldrige*, 655 F.2d 283 (D.C.Cir.1981). Thus although plaintiff has not pointed to any specific contract on which it was wrongfully denied the opportunity to bid, plaintiff has suffered an interruption of a long-standing relationship with the government as a successful bidder on government contracts. I therefore find that plaintiff has satisfied the first part of the standing test.

### B. Zone of Interest

Injury in fact alone is not sufficient to merit standing, however. Plaintiff must also demonstrate that its interests fall "arguably within the zone of interests to be protected or regulated" by the statutes or constitutional guarantees relied upon. *Sierra Club v. Morton*, 405 U.S. 727, 733, 92 S.Ct. 1361, 1365, 31 L.Ed.2d 636 (1972), cited in *American Federation of Government Employees, AFL–CIO v. Stetson*, 640 F.2d 642, 646 (5th Cir. 1981); *Association of Data Processing Service Organizations v. Camp*, 397 U.S. 150, 153, 90 S.Ct. 827, 829, 25 L.Ed.2d 184 (1970). Although this limitation of the standing doctrine beyond injury in fact has been termed "prudential" rather than constitutional, the duty to apply this limitation in the instant case is nondiscretionary. *Contra, Peoples Gas, Light & Coke Co. v. U. S. Postal Service*, 658 F.2d 1182, 1202 (7th Cir. 1981) (Campbell, J., dissenting). The Fifth Circuit has consistently applied this standard to complaints arising from agency action taken pursuant to a

particular statutory mandate where there exists no specific congressional authorization of review, as is the case here.

Plaintiff seeks to avoid the application of the zone of interest test by urging that it deserves standing in order to prosecute the public interest in agencies not exceeding their statutory mandates. In *Scanwell Laboratories, Inc. v. Shaffer*, 424 F.2d 859 (D.C.Cir.1970), the court held that a disappointed bidder in a government procurement contract has standing under the Administrative Procedure Act, 5 U.S.C. § 701 *et seq.* ("APA"), thereby dispensing with the old "legal interest" test of *Perkins v. Lukens Steel Co.*, 310 U.S. 113, 60 S.Ct. 869, 84 L.Ed. 1108 (1940), which had deprived unsuccessful bidders standing to challenge the legality of bidding procedures. The *Scanwell* court determined that allowing disappointed bidders to bring suit would permit them to "vindicate their very real interests" and further as well "the public interest in having agencies follow the regulations which control government contracting." *Id.* at 864, quoted in *Control Data Corp.*, 655 F.2d at 292.

Plaintiff here alleges not the failure of DOD to follow its own procurement regulations in awarding a contract, but rather the illegality of the regulations. After a careful and detailed discussion of the problem of standing in the bidder context, the D. C. Circuit Court declined to extend the *Scanwell* rationale "beyond its 'disappointed bidder' context." *Control Data Corporation*, 655 F.2d at 292. According due respect to the expertise of the D. C. Circuit in these

matters, *see Union Carbide Corporation v. Train*, 73 F.R.D. 620, 622 (S.D.N.Y.1977), I find that plaintiff here, not having bid on a specific contract, cannot achieve standing under the *Scanwell* rationale.[9]

The zone of interest test focuses upon the proper relationship between the legislative and judicial branches of government, serving the purpose of "allowing courts to define those instances where it believes the exercise of its power at the instigation of a particular party is not congruent with the mandate of a legislative branch in a particular subject area." *Control Data*, 655 F.2d at 297 (D.C.Cir.1981), quoting *Tax Analysts and Advocates v. Blumenthal*, 566 F.2d 130, 140, (D.C.Cir.), *cert. denied*, 434 U.S. 1086, 98 S.Ct. 1280, 55 L.Ed.2d 791 (1978). To apply the zone of interest test, this court must examine the language of the relevant statutes, regulations, and legislative history to discern whether Rutter Rex's interest arguably falls within the zone Congress intended to be protected or regulated. *Control Data*, 655 F.2d at 293. "Slight" beneficial indicia will be sufficient to sustain a party's assertion of standing. *Constructores Civiles de Centroamerica, S. A. v. Hannah*, 459 F.2d 1183, 1189 (D.C.Cir.1972); *Control Data*, 655 F.2d at 295.

While small business bidders clearly fall within the zone of protected interests of the Small Business Act and the Armed Forces Procurement Act, *Ray Baillie*, 477 F.2d at 701; *Kinnett Dairies*, 580 F.2d at 1265–66, the status of a large bidder under these statutes is not settled. Plaintiff argues that its near-preclusion[10] from bidding on government contracts contravenes the ex-

---

**9.** "Disappointed bidder" cases following *Scanwell* include *Hayes International Corporation v. McLucas*, 509 F.2d 247 (5th Cir. 1975); *Kinnett Dairies, Inc. v. Farrow*, 580 F.2d 1260 (5th Cir. 1978); *Union Carbide v. Train*, 73 F.R.D. 620 (S.D.N.Y.1977); *Merriam v. Kunzig*, 476 F.2d 1233 (3d Cir.), *cert. denied*, 414 U.S. 911, 94 S.Ct. 233, 38 L.Ed.2d 149 (1973) ("the statute protects not only the Government's interest in securing advantageous contracts, but also the interest of those responding to the Government's invitation to do business with it." Id. at 1242); *Goldhaber v. Foley*, 519 F.Supp. 466, 480 (E.D.Pa.1981); *Collins & Co. v. Claytor*, 476 F.Supp. 407 (N.D.Ga.1979).

See also *J. H. Rutter Rex Manufacturing Co., Inc. v. U. S. A., et al.*, Civil Action No. 77–3018 (E.D.La. March 6, 1978).

*Cf. PRI Pipe Supports v. Tennessee Valley Authority*, 494 F.Supp. 974 (N.D.Miss.1980) (APA not sufficient basis for standing where plaintiff's bid was non-responsive.)

**10.** The court does not hereby rule on plaintiff's claim that it should be considered as a "frustrated" bidder, completely precluded from bidding for any contracts, since plaintiff's lack of opportunity to bid is contested by the defendants. It is significant, however, that the frustrated bidder in *Ballerina Pen Co. v. Kunzig*, 433 F.2d 1204 (D.C.Cir.1970), was found to be

press interest of the Small Business Act in promoting competition in the American economic system. Plaintiff's interest in its own economic well-being might be said to be arguably within the zone sought to be protected by the Small Business Act if the Act is read broadly to promote small business not only for the benefit of small business, but also for the well-being of the nation.[11] Recognizing that analysis of the question of standing requires the court to look at the party's status and not at the merits of the case, and noting the availability of the summary judgment proceeding under Rule 56 of the Federal Rules of Civil Procedure to weed out frivolous lawsuits, I read the language of the Small Business Act, 15 U.S.C. § 631(a), to encompass plaintiff's interest in economic viability within the parameters of the zone of interests to be protected by the Act. Rutter Rex thus meets the second prong of the standing test.

### C. No Statutory Prohibition

█ The third part of the test is also met. None of the relevant statutes expressly prohibits judicial review of agency action, and the court "cannot infer a congressional intent to preclude judicial review of agency actions which are alleged to have subverted a clearly stated declaration of policy." *Cincinnati Electronics Corporation v. Kleppe*, 509 F.2d 1080, 1086 (6th Cir. 1975). Plaintiff alleges that DOD actions and regulations undermine the arguably clear policy of the Small Business Act and the Armed Forces Procurement Act to enhance competition, and so gains standing to contest their validity.

### III. DISCUSSION

### A. Constitutional Claim

█ Because of plaintiff's long-standing relationship with the government as a supplier of military garments, plaintiff claims

that the small business program, by greatly reducing the number of contracts on which it is able to bid, operates to deprive it of a property interest without due process of law in violation of the due process clause of the Fifth Amendment. However, it has long been recognized that the government, like private individuals and businesses, has the power "to determine those with whom it will deal, and to fix the terms and conditions upon which it will make needed purchases." *Perkins*, 310 U.S. at 127, 60 S.Ct. at 876. In exercising this power, of course, the government remains subject to the constitutional requirement of due process. I cannot accept the plaintiff's argument that the Department of Defense Small Business Program is unconstitutional because the plaintiff is disadvantaged competitively. "There is no constitutional duty to offer government procurement contracts for competitive bidding." *Ray Baillie*, 477 F.2d at 709; *Crown Zellerbach Corp. v. Marshall*, 441 F.Supp. 1110 (E.D.La.1977) (denying preliminary injunction requiring government to contract with firms not meeting standard for affirmative action plan). The DOD has chosen to encourage small business participation in procurement contracts through the award of a "fair proportion" of contracts, drawing up industry classifications as it sees fit. No breach of its own procedures has been alleged. "In the area of socio-economic legislation, the government's action must be upheld if it is rationally related to a proper government purpose." *Ray Baillie*, 477 F.2d at 709, citing *Dandridge v. Williams*, 397 U.S. 471, 90 S.Ct. 1153, 25 L.Ed.2d 491 (1970). Certainly the small business program passes constitutional muster. Plaintiff's claims of due process violation are without merit.

### B. Statutory Claim

█ Plaintiff additionally requests declaratory and injunctive relief under the

---

an intended beneficiary of the statute in question.

**11.** "The purposes of the Act would not be achieved, however, if the aid to small business consisted of a structure which undermined the vitality of other businesses within the industry. Inherent in such action are the seeds of de-

struction of the same free system the Act is intended to protect." *Duke City Lumber Co. v. Butz*, 382 F.Supp. 362 (D.D.C.1974), *aff'd in relevant part*, 539 F.2d 220 (D.C.Cir.1976), *cert. denied*, 429 U.S. 1039, 97 S.Ct. 737, 50 L.Ed.2d 751 (1977).

Administrative Procedure Act, 5 U.S.C. §§ 702–706, on the grounds that the DOD small business set-aside regulations contained in Part 7 of 32 C.F.R. are arbitrary and capricious and in excess of statutory authority. Although the challenge to the validity of the regulations may be decided solely by reference to the regulations and their statutory authority, the wellspring of plaintiff's dissatisfaction with the small business program is best appreciated by examining the undisputed facts.

The clothing manufacturing industry involves considerable participation by small business concerns, while many other industries from which the government must procure its equipment and supplies do not. As a result of the differences among industries, varying proportions of contracts are set aside for small business in each industry. DOD small business set-asides in 1980 were 7.2% of total awards, but in the contract categories for which plaintiff would have liked to have bid, over 90% of the contracts were set aside for plaintiff's smaller competitors. Plaintiff claims to have been effectively excluded from the bidding process. The regulations exceed statutory authority, plaintiff claims, because they fail to place a ceiling on set-asides at some point below 100%, reserving to large business the opportunity to compete for contracts in every industry, as mandated by the "full and free competition" provisions of the relevant statutes, the Small Business Act and the Armed Forces Procurement Act.

The Fifth Circuit rejected a similar challenge to a program to award federal subcontracts to socially or economically disadvantaged small businesses in *Ray Baillie.* The court's reluctance to encroach upon agency discretion is instructive:

> The complex and volatile nature of problems, including allocation of government procurement contracts, often causes Congress to cast its statutory provisions in general terms, leaving to the agency the task of spelling out the specific regulations and programs. In this manner, agency expertise may be fully employed

in dealing with such problems. The agency may evaluate the competing alternatives and formulate the policy best suited to the attainment of the statutory goal. Furthermore, the agency is left free to respond to the demands of changing circumstances or conditions unanticipated by Congress. Indeed, an agency could easily be prevented from serving its intended purpose if burdened with specific statutory regulations and programs.

> So it is with the case at bar. Congress has declared that the actual and potential capacity of small business concerns must be developed and that a fair proportion of total purchases and contracts of the federal government must be placed with such firms. 15 U.S.C. § 631. It has given the SBA the statutory authority and necessary discretion in awarding subcontracts to accomplish that goal. The discretion as to which firms shall receive subcontracts and the decision as to what regulations shall govern procurement is left to the SBA. 15 U.S.C. § 637. It is not the duty of the courts to evaluate the arguments regarding allocation of government procurement contracts or to consider the wisdom of the present programs.[12]

More recently, in *Kinnett Dairies,* the court addressed the DOD small business set-aside program:

> The government's interpretation of the procurement regulation is fully consistent with the statutory requirements of the Small Business Act and the Armed Forces Procurement Act. These controlling statutes simply require that a "fair proportion" of government purchases and contracts be placed with small businesses. Congress left it to the agencies to implement the policy through regulations and practices of their own construction.[13]

Furthermore, congressional review of the issues plaintiff raises in this action, together with congressional failure to modify longstanding agency practice, mandate that the administrative construction of the statutes be followed by this court "unless there

---

**12.** 477 F.2d 696, 703–4 (5th Cir. 1973).

**13.** 580 F.2d 1260, 1272 (5th Cir. 1978).

are compelling indications that it is wrong." *Florida v. Mathews,* 526 F.2d 319, 324 (5th Cir. 1976). *See also Red Lion Broadcasting Co. v. FCA,* 395 U.S. 367, 381, 89 S.Ct. 1794, 1801, 23 L.Ed.2d 371 (1969). Since the enactment of the "fair proportion" language in the Small Business Act and the Armed Forces Procurement Act, Congress has frequently reviewed defendants' implementation of the small business set-aside program.[14]

The court's task in searching for "compelling indications" that DOD interpretation of "fair proportion" is wrong is eased by the existence of a decision by the General Accounting Office on a protest by this plaintiff to a DLA small business set-aside. The Fifth Circuit explained in *Kinnett Dairies*:

> When actions of procurement officials have been expressly validated by considered decision of the GAO or are in compliance with a reasonably consistent pattern of GAO determinations, the courts should be extremely reluctant to overturn such actions.[15]

*See also Wheelabrator Corp. v. Chafee,* 455 F.2d 1306 (D.C.Cir.1971); *M. Steinthal & Co. v. Seamans,* 455 F.2d 1289, 1305 (D.C. Cir.1971).

Rutter Rex alleged in its protest in December, 1977, that DLA's set-aside program was not authorized by law, unfairly denied it the opportunity to compete, and precluded the government from obtaining a fair and reasonable price. The Comptroller General found:

> What Congress intended by the phrase "fair proportion," however, is not evident from either the statutory language itself or any legislative history.... What is clear is that the broadly worded statutory language refers to the totality of Govern-

ment procurement, *i.e.,* small business is to receive a fair proportion of the Government's total procurements. In other words, the fact that small business concerns may receive a significant portion of Government contracts in a particular industry does not necessarily mean that they are receiving more than a fair proportion of the Government's total contracts. [cites omitted][16]

See also Fermont Division, Dynamics Corporation of America, Comp.Gen. B–195431, 13 (June 23, 1980). This court can discover no reason to reverse the conclusion of the Comptroller General's decision that "fair proportion" refers to the totality of government procurements.

This court further finds no basis for complying with plaintiff's request that agency small business set-asides be suspended pending definition of "fair proportion". Courts have repeatedly held that broad, undefined statutory terms grant complete discretion to the agency. See, e.g., *Perkins v. Bergland,* 608 F.2d 803, 805–806 (9th Cir. 1979); *Hi-Ridge Lumber Co. v. United States,* 443 F.2d 452, 455 (9th Cir. 1971).

### C. Goal Practices

■ Plaintiff challenges not only the regulations discussed above, but also the internal DOD practice of setting goals for the department's set-asides and for total small business awards. Congress amended the Small Business Act in 1978 to encourage even greater efforts to increase small business participation:

> (g) The head of each Federal agency shall, after consultation with the [Small Business] Administration, establish goals for the participation by small business concerns ... in procurement contracts of such agency having values of $10,000 or more. Goals established under this sub-

14. *See, e.g.,* Congressional Hearings:
Small Business Procurement Expansion and Simplification Act: Hearings Before the Subcomm. on Government Procurement of the Senate Select Comm. on Small Business, 95th Cong., 2d Sess. (1978); DOD Procurement Policies and Practices: Hearing Before the Subcomm. on Minority Enterprise and General Oversight of the House Comm. on Small Business, 95th Cong., 2d Sess. (1978); Oversight Hearings on Small Business Ad-

ministration Programs and Activities: Hearings Before the Subcomm. on SBA Oversight and Minority Enterprise of the House Comm. on Small Business, 94th Cong., 2d Sess. (1976).

15. 580 F.2d 1260, 1272 (5th Cir. 1978).

16. J. H. Rutter Rex Manufacturing Co., Inc., Comp.Gen. B–190905 (July 11, 1978).

section shall be jointly established by the Administration and the head of each Federal agency and shall realistically reflect the potential of small business concerns ... to perform such contracts ....

15 U.S.C. § 644(g).[17]

The goal for small business participation required by the Small Business Act applies to all awards to small business from set-asides, unrestricted bidding, or any other award procedure. The Department of Defense also sets a goal for small business set-asides alone. To implement the goals, the DOD sets a goal for the Defense Logistics Agency ("DLA"), and DLA, in turn, sets goals for each of the six supply centers under its jurisdiction, including the DSPC. Until fiscal year 1981, DLA also assigned goals to each of DPSC's three directorates, "Clothing and Textiles", "Subsistence", and "Medical and Material", but now simply sets goals for the entire Center.

In past years, higher goals were set for the Clothing and Textile directorate of DPSC than for other directorates because the clothing manufacturing industry is one which involves considerable participation by small business concerns. Even within the Clothing and Textile directorate, few manufacturers for products in "textile" categories qualify for the set-aside program. As a result, to meet even a modest goal for set-asides in the Clothing and Textile directorate, or in DPSC, a high percentage of set-asides are made in the clothing industry, and specifically in the three contract categories in which plaintiff is prepared to bid.[18]

The goals, claims plaintiff, are established on an annual basis in a completely arbitrary fashion, but nevertheless serve as minimum quotas. Without a firm definition of "fair proportion", the goal setting activity is arbitrary and capricious, it is argued.

Plaintiff's challenge to the goals practices of DOD and DLA which govern small business set-asides must fail. The goals do not determine which contracts will be set aside; the goals set are sometimes not attained. Their function is rather to gauge the effectiveness of the small business program. As internal management tools, they do not constitute final agency action reviewable under the Administrative Procedure Act, 5 U.S.C. § 704.

## IV. CONCLUSION

Although plaintiff has standing to invoke judicial review of the DOD interpretation of the Small Business Act and the Armed Forces Procurement Act, I find as a matter of law that the challenged regulations are consistent with DOD's statutory mandate. I further find that the challenged goal practices carried out by defendants are not final agency action amenable to review by this court.

Accordingly, summary judgment in favor of defendants and defendant-intervenor is granted and plaintiff's motion for summary judgment is denied.

---

**17.** The Department of Defense added a provision to the Defense Acquisition Regulations in 1979 in compliance with the amendment: 32 C.F.R. § 1–705.6.

**18.** Rutter Rex has in the past bid on and competed successfully for contracts to furnish items of sewing apparel to the defendants falling within Federal Stock Classifications 8405—"outerwear-men's"; 8410—"outerwear-women's; and 8415—"clothing, special purpose".