**J.H. RUTTER REX MANUFACTURING CO., INC., Plaintiff-Appellant,**

v.

**UNITED STATES of America, et al., Defendants-Appellees.**

No. 82–3239.

United States Court of Appeals, Fifth Circuit.

June 9, 1983.

Montgomery, Barnett, Brown & Read, Daniel Lund, New Orleans, La., for plaintiff-appellant.

Anthony J. Steinmeyer, Alfred R. Mollin, Civ. Div., Dept. of Justice, Appellate Staff, Washington, D.C., for U.S.

Stone, Pigman, Walther, Wittman & Hutinson, Gerard E. Wimberly, Jr., New Orleans, La., Batzell, Nunn & Bode, Dennis J. Riley, Washington, D.C., for DeRossi & Son, intervenor.

Before TUTTLE,* POLITZ and GARWOOD, Circuit Judges.

TUTTLE, Circuit Judge:

This case is an appeal from a summary judgment in the United States District Court for the Eastern District of Louisiana. 534 F.Supp. 331. The plaintiff-appellant, J.H. Rutter Rex Manufacturing Company, Inc., ("Rutter Rex") contends (1) that United States Department of Defense ("DOD") regulations authorizing the "set aside" of certain government contracts for exclusive participation by small business concerns exceed statutory authority, and (2) that it has been unlawfully deprived of a constitutional property right of access to the government contract bidding process. Because we find that the disputed regulations are a proper exercise of the broad authority granted by Congress to government procurement agencies and that no constitutional protections of the type urged by Rutter Rex exist for access to the government bidding process, we reject the appellant's claims and affirm the holdings of the court below.

## I.

Rutter Rex is an apparel manufacturer in New Orleans, Louisiana. Since it employs approximately 1500 persons in its combined operations, the appellant is ineligible to bid on certain government contracts which have been set aside for small businesses[1] pursuant to the Armed Services Procurement Act, 10 U.S.C. § 2301 et seq., and the Small Business Act, 15 U.S.C. § 631 et seq., and regulations promulgated thereunder.

Over the last 20 years, Rutter Rex has operated its New Orleans plant almost exclusively for the production of garments procured by the U.S. Government. However, since 1976, the appellant has experienced gradually decreasing government business culminating with its failure to secure a single government contract in 1981. Rutter Rex contends that its loss of this lucrative source of business is the result of DOD regulations issued and enforced in violation of the powers granted to government procurement agencies by the Small Business Act and the Armed Services Procurement Act (hereafter referred to as the "procurement statutes"). It brings this action seeking to have these regulations declared invalid.

## II.

In 1947, Congress passed the Armed Services Procurement Act which provides, "It is the policy of Congress that a fair proportion of the purchases and contracts under this Chapter be placed with small business concerns." 10 U.S.C. § 2301. The Senate Report accompanying this legislation noted that this requirement was grounded in a desire to diversify the Nation's defense production and thus add "production security in the event of any emergency and assist in establishing insurance against bottlenecks." S.Rep. No. 571, 80th Cong., 1st Sess. 6 (1947).

Congress extended the fair proportion requirement to all government procurements when it enacted the Federal Property and Administrative Services Act of 1949 (41 U.S.C. § 251 et seq.) and the Small Business Acts of 1953 and 1958 (15 U.S.C. § 631 et seq.). The 1953 Act stated:

It is the declared policy of the Congress that the government should aid, counsel, assist, and protect insofar as is possible the interests of small-business concerns in order to serve free competitive enterprise, to insure that a fair proportion of the total purchases and contracts for supplies and services for the Government be placed with small-business enterprises, and to maintain and strengthen the overall economy of the Nation.

---

* Circuit Judge of the Eleventh Circuit, sitting by designation.

1. A small business concern in the apparel industry is defined by Small Business Administration regulations as one which employs fewer than 500 persons. 13 C.F.R. § 121.3–8 and § 121-Schedule A.

15 U.S.C. § 631. The 1958 Act provided slightly more specific guidelines for procuring agencies attempting to comply with Congressional intent when it declared that government procurement contracts should be awarded to small business concerns when such awards are determined:

1. To be in the interest of maintaining or mobilizing the Nation's full productive capacity;

2. To be in the interest of war or national defense programs;

3. To be in the interest of assuring that a fair proportion of the total purchases and contracts for property and services for the Government are placed with small-business concerns; or

4. To be in the interest of assuring that a fair proportion of the total sales of Government property be made to small-business concerns ...

15 U.S.C. § 644(a).

In 1958, the DOD adopted regulations intended to implement the requirements of the procurement statutes.[2] These regulations provided, *inter alia,* that certain government acquisitions would be "set aside for the exclusive participation of small business concerns." 32 C.F.R. 1–706.1(b). The regulations further provided that such set asides would occur "if the contracting officer determines that there is a reasonable expectation that (i) offers will be obtained from a significant number of responsible small business concerns and (ii) awards will be made at reasonable prices." 32 C.F.R. 1–706.3(a). In 1979, subpart (i) of the above regulation was amended to provide that bids need only be reasonably expected from "at least two responsible small business concerns." 32 C.F.R. 1–706.5.

This procedure for the determination of set asides was slightly altered in 1979 when the DOD issued new regulations providing that once a contracting officer successfully acquired a product under a small business set aside, all future requirements of that agency (or agency subdivision) for that product may continue to be so acquired until such time as the contracting officer determines that either of the two necessary conditions no longer exists. 32 C.F.R. § 1–706.1(f). These recently-promulgated regulations also provide that no set aside will be disapproved merely because "a large percentage of previous acquisitions of the item has been placed with small business concerns [or because] small business concerns are considered to be receiving a fair proportion of total contracts for supplies or services." 32 C.F.R. § 1–706.1(j)(i, vi).

Also, in 1978, Congress amended 15 U.S.C. § 644 to require the head of each federal agency to establish goals for the participation of small business concerns in the procurement of contracts of more than $10,000. 15 U.S.C. § 644(g).[3] Congress or-

**2.** These regulations, originally known as the Armed Forces Procurement Regulations, are now entitled the Defense Acquisition Regulations and are set forth at 32 C.F.R. Part 7.

Though the Armed Services Procurement Act governs the procedures for DOD procurement, the DOD (like all federal agencies) is also bound by the strictures of the Small Business Act and has promulgated its regulations in conformance therewith. In fact, 15 U.S.C. § 639(d) evidences that Congress was particularly concerned that the DOD comply with the policies favoring small businesses. That Code section requires the DOD (but no other agency) to make a monthly report to Congress "showing the amount of funds appropriated to the Department of Defense which have been expended, obligated or contracted to be spent with small business concerns."

**3.** 15 U.S.C. § 644(g) provides:

The head of each Federal agency shall, after consultation with the Administration, establish goals for the participation by small business concerns, and by small business concerns owned and controlled by socially and economically disadvantaged individuals, in procurement contracts of such agency having values of $10,000 or more. Goals established under this subsection shall be jointly established by the Administration and the head of each Federal agency and shall realistically reflect the potential of small business concerns and small business concerns owned and controlled by socially and economically disadvantaged individuals to perform such contracts and to perform subcontracts under such contracts. Whenever the Administration and the head of any Federal agency fail to agree on established goals, the disagreement shall be submitted to the Administrator of the Office of Federal Procurement Policy for final determination.

dered that these goals should "realistically reflect the potential of small business concerns to perform such contracts . . ." 15 U.S.C. § 644(g). Though the head of each federal agency is required to justify a failure to meet such goals in an annual report to the Small Business Administration, 15 U.S.C. § 644(h), no sanctions are imposed for such failure and the goals do not as a matter of law have any impact on individual set aside decisions.

### III.

The parties to this action vigorously dispute whether Rutter Rex has standing to challenge the validity of the regulations. Because the standing issue is not determinative, we assume, without deciding, that Rutter Rex has standing to contest these regulations.

### IV.

#### A.

Rutter Rex makes two principal attacks on the DOD regulations. First, Rutter Rex notes that the procurement regulations promulgated by DOD provide both in theory and in practice for a 100 percent small business set aside of certain products. In the appellant's industry, the manufacture and marketing of apparel, over 90 percent of DOD procurements have been allocated to small business. Rutter Rex argues that such high levels of set asides clearly constitute more than a "fair proportion" of procurements in the apparel industry and that the regulations are thus in excess of statutory authority. Rutter Rex also asserts that the goal practices, as implemented by the DOD and other procurement agencies, contribute substantially to awards in excess of a fair proportion by placing additional

pressure on procurement officers to make set asides, particularly in industries such as the appellant's where the great majority of participants are small business concerns.

Second, Rutter Rex contends that the significant percentage of set asides in particular industries violates the express direction of Congress for "full and free competition" in the procurement process. The appellant particularly focuses on the 1979 DOD regulation which allows a set aside whenever reasonable bids are anticipated from two or more responsible small business concerns. Rutter Rex contends that two bids can hardly constitute the open competition envisioned by Congress.

#### B.

■ Congress has delegated broad powers to federal agencies to achieve the purposes of the procurement statutes;[4] our review is therefore limited to determining whether the disputed regulations are "reasonably related to the purposes of the enabling legislation." *Thorpe v. Housing Authority of the City of Durham,* 393 U.S. 268, 280–81, 89 S.Ct. 518, 525–526, 21 L.Ed.2d 474 (1969); *Mourning v. Family Publications Service,* 411 U.S. 356, 364, 93 S.Ct. 1652, 1658, 36 L.Ed.2d 318 (1973). In *National Muffler Dealers Association v. United States,* 440 U.S. 472, 99 S.Ct. 1304, 59 L.Ed.2d 519 (1979), the Supreme Court added flesh to the bare bones of this loosely-worded test:

In determining whether a particular regulation carries out the Congressional mandate in a proper manner, we look to see whether the regulation harmonizes with the plain language of the statute, its origin, and its purpose. A regulation may have particular force if it is a sub-

---

**4.** *See* 10 U.S.C. § 2202:

Notwithstanding any other provision of law, an officer or agency of the Department of Defense may obligate funds for procuring, producing, warehousing, or distributing supplies, or for related functions of supply management, only under regulations prescribed by the Secretary of Defense. The purpose of this section is to achieve the efficient, economical, and practical operation of an inte-

grated supply system to meet the needs of the military departments without duplicate or overlapping operations or functions.

*See also* 15 U.S.C. § 634(b)(6): "In the performance of, and with respect to, the functions, powers and duties vested in him by this chapter the [Small Business] Administrator may . . . make such rules and regulations as he deems necessary to carry out the authority vested in him by or pursuant to this chapter."

stantially contemporaneous construction of the statute by those presumed to have been aware of congressional intent. If the regulation dates from a later period, the manner in which it evolved merits inquiry. Other relevant considerations are the length of time the regulation has been in effect, the reliance placed on it, the consistency of the [agency's] interpretation, and the degree of scrutiny Congress has devoted to the regulation during subsequent reenactments of the statute.

*Id.* at 477, 99 S.Ct. at 1307.

In the present case, Rutter Rex bears a particularly heavy burden. The Supreme Court has long recognized the special judicial deference due administrative agencies in the area of procurement. *Perkins v. Lukens Steel Co.,* 310 U.S. 113, 127–28, 60 S.Ct. 869, 876–877, 84 L.Ed. 1108 (1940). *See also Hayes International Corp. v. McLucas,* 509 F.2d 247, 258 (5th Cir.1975). In construing the statutes relevant to the present action, this Court has noted the extraordinarily broad discretion bestowed on agencies by the Congress: "[the procurement statutes] simply require that a 'fair proportion' of government purchases and contracts be placed with small businesses. Congress left it to the agencies to imple-

ment this policy through regulations and practices of their own construction." *Kinnett Dairies, Inc. v. Farrow,* 580 F.2d 1260, 1272 (5th Cir.1978).[5] This broad grant of power to procuring agencies is heightened considerably by the fact that Congress has never undertaken to define the term "fair proportion" despite its use in six separate statutes.[6]

### C.

With these principles in mind, we consider first Rutter Rex's contention that the DOD regulations invalidly limit competition in the government procurement process. While it is certainly true that the procurement acts recognize the vital role of "full and free competition" in the maintenance of this Nation's economic health,[7] the Congress has explicitly stated that "[s]uch security and well-being cannot be realized unless the actual and potential capacity of small business is encouraged and developed." 15 U.S.C. § 631(a). This statement of purposes, together with the protections provided for small businesses in the procurement statutes, makes it clear that Congress intended these statutes as a means to protect small businesses from the ravages of unchecked competition so as to ensure a vibrant, diversified economy; this Court

---

**5.** *See also Ray Baillie Trash Hauling, Inc. v. Kleppe,* 477 F.2d 696 (5th Cir.1973): "Congress ... has given the Small Business Administration the statutory authority and necessary discretion in awarding subcontracts to accomplish [the goal of development of small businesses]. The discretion as to which firm shall receive subcontracts and the decision as to which regulations shall govern procurement is left to the Small Business Administration." *Id.* at 703–04.

We also note that one of the primary purposes of the Armed Services Procurement Act of 1947 was to encourage the exercise of judgment and discretion by individual contracting officers. S.Rep. No. 571, 80th Cong., 1st Sess. (1947).

**6.** S.Rep. No. 760, 93d Cong., 2d Sess., App. A, "Legislative History of the Phrase 'Fair Proportion' in Small Business Act" (1974). The six statutes which have utilized the term "fair proportion" in relation to procurement from small businesses are:

1. The Armed Services Procurement Act of 1947, Section 2(b), 10 U.S.C. § 2301;

2. The Selective Service Act of 1948, Section 18(a), 50 U.S.C.App. § 468(a) (1970);

3. The Federal Property and Administrative Services Act of 1949, Section 302(b), 41 U.S.C. § 252(b) (1970);

4. The Defense Production Act Amendments of 1951, Section 714(f)(2);

5. The Small Business Act of 1953; and

6. The Small Business Act of 1958, Section 2[2], 15 U.S.C. § 631 (1970).

**7.** "The essence of the American economic system of private enterprise is free competition. Only through full and free competition can free markets, free entry into business and opportunities for the expression and growth of personal initiative and individual judgment be assured. The preservation and expansion of such competition is basic not only to the economic well-being but to the security of this Nation ..." 15 U.S.C. § 631(a). *See also* 10 U.S.C. § 2305(a).

recognized as much in *Ray Baillie Trash Hauling, Inc. v. Kleppe,* 477 F.2d 696 (5th Cir.1973) where it stated:

> The purpose of the [Small Business] Act is to assist small business concerns. The Act is based on the premise that such firms are unable to compete effectively in the marketplace and therefore cannot secure government procurement contracts awarded through competitive bidding. By increasing their participation in government procurement, however, these firms can eventually become self-sufficient, viable businesses capable of competing effectively in the marketplace.

*Id.* at 708.[8] Rutter Rex therefore fundamentally misconstrues the procurement statutes when it interprets "full and free competition" as a means to achieve the statutes' purposes rather than an end in itself; though the legislative history of the relevant statutes does not shed much light on this question, Congress has apparently judged that it is in the best interests of the American people to risk the possibility of slightly higher costs for today's government purchases in return for the dividends of an economy and national defense that are not dependent on a small number of potentially vulnerable producers.[9]

More specifically, we conclude that amended 32 C.F.R. § 1–706.3(a) does not violate the statutory preference for competition simply because it provides that a procurement may be set aside if the contracting officer anticipates receiving bids from at least two responsible small business concerns. Rutter Rex simply ignores that portion of the regulation which requires that set aside awards be made only at reasonable prices. 32 C.F.R. § 1–706.3(a)(ii). Read as a whole, the regulations can only be said to enhance the twin (yet sometimes divergent) goals of the procurement acts: the promotion of small business interests and the efficient and economical acquisition of goods and services by the government.[10]

### D.

We now turn to the assertion of Rutter Rex that the regulations in question are invalid since they do not establish a ceiling on the percentage of awards which may be set aside in any particular industry. Rutter Rex notes that over 90 percent of the awards for which it would otherwise be eligible to compete have been set aside and argues that no possible construction of the term "fair proportion" might include set asides of such lofty proportions.

However, since DOD set asides in 1980 were only 7.2 percent of its total procurement awards,[11] the appellant's argument rests on the assumption that Congress intended the fair proportion mandate to be applied on an industry-by-industry (or even product-by-product) basis rather than to the collective pool of DOD procurements. In support of this contention, the appellant notes that the Small Business Act requires that a "fair proportion of the *total* purchases and contracts" (emphasis added) of each agency be placed with small businesses whereas the Armed Services Procurement Act omits the word "total" and only requires that small businesses receive a "fair proportion of the purchases and contracts" of the DOD. The appellant contends that

---

8. *See also Kinnett Dairies,* 580 F.2d at 1274: "[T]he Small Business Act and regulations favoring small businesses modify these more general requirements that [agencies] procure goods at 'competitive market prices . . .' "

9. *Kinnett Dairies,* 580 F.2d at 1275: "We recognize that the policies of the Small Business Act are to some extent inconsistent with what might be perceived as the primary function of the [DOD procurement regulations], to supply the procurement needs of the armed forces at minimum cost."

10. Section 1–706.3(a) is also consistent with the long-standing congressional desire that a greater portion of government procurement contracts be placed with small businesses. *See* discussion, section IV.D. *infra.* This specific quantification of a minimal number of necessary bidders appears to best serve this purpose while maintaining the head-to-head competition necessary to assure economical government purchases.

11. This figure was derived from the district court opinion. 534 F.Supp. at 338. Neither party took exception to the trial court's reliance on this figure.

this disparity evidences a deliberate attempt by Congress to place defense procurements on a different footing whereby fair proportion would be calculated on an industry-by-industry basis rather than on the basis of total defense procurements.

■ Unfortunately for the appellant, its imaginative argument goes no further. The appellant does not direct this Court to any portion of the legislative history of either statute which would support its in-terpretation nor does it advance a single ground on which defense procurements might reasonably be distinguished for these purposes from procurements of other federal agencies. In fact, the voluminous legislative histories of these government procurement acts, while not casting any direct light on this dilemma, evidence a consistent and uninterrupted eagerness on the part of Congress to place a greater number of procurement contracts, defense and otherwise, in the hands of small businesses.[12] Despite

12. *See, e.g.,* Hearings:

Small Business Procurement Expansion and Simplification Act: Hearings Before the Subcomm. on Government Procurement of the Senate Select Comm. on Small Business, 95th Cong., 2d Sess. (1978); DOD Procurement Policies and Practices: Hearings Before the Subcomm. on Minority Enterprise and General Oversight of the House Comm. on Small Business, 95th Cong., 2d Sess. (1978); Oversight Hearings on Small Business Administration Programs and Activities: Hearings Before the Subcomm. on SBA Oversight and Minority Enterprise of the House Comm. on Small Business, 94th Cong., 2d Sess. (1976); Procurement Assistance Programs of the Small Business Administration: Hearing Before the Senate Select Comm. on Small Business, 94th Cong., 1st Sess. (1975); The Position of Small Business in Procurements for Federally Supported Programs: Hearing Before the Subcomm. on Government Procurement and International Trade of the House Permanent Select Comm. on Small Business, 93d Cong., 1st Sess. (1973); Commission on Government Procurement Recommendations and Labor Surplus Area Procurement: Hearings Before the Subcomm. on Government Procurement of the Senate Select. Comm. on Small Business, 93d Cong., 1st Sess. (1973); The Position and Problems of Small Business in Government Procurements: Hearing Before the Subcomm. on Small Business, 92d Cong., 1st Sess. (1971); Small Business and Labor Surplus Set-Asides and 8(a) Contracts: Hearing Before the Subcomm. on Government Procurement of the Senate Select Comm. on Small Business, 91st Cong., 2d Sess. (1970); Small Business in Government Procurement—Before and After Defense Cutbacks, Hearings Before the Subcomm. on Government Procurement of the House Select Comm. on Small Business, 91st Cong., 2d Sess. (1970); The Position of Small Business in Government Procurement: Hearings Before Subcomm. No. 2 on Government Procurement and Economic Concentration of the House Select Comm. on Small Business, 90th Cong., 1st & 2nd Sess. (1967–1968); Government Procurement—1966: Hearing Before the Subcomm. of the Senate Select Comm. on Small Business, 89th Cong., 2d Sess. (1966); Small Business Subcontracting and Set-Aside Programs: Hearings Before Subcomm. No. 2 on Government Procurement of the House Select Comm. on Small Business, 89th Cong., 1st Sess. (1965); The Role of Small Business in Government Procurement: Hearings Before the Subcomm. of the Senate Select Comm. on Small Business, 88th Cong., 2d Sess. (1964); Government Small Business Procurement Practices and Programs: Hearings Before Subcomm. No. 2 on Government Procurement of the House Select Comm. on Small Business, 88th Cong., 1st Sess. (1963); The Role of Small Business in Government Procurements—1962–1963; Hearing Before the Senate Select Comm. on Small Business, 87th Cong., 2d Sess. (1962); The Role of Small Business in Government Procurement—1961, Hearings Before the Subcomm. of the Senate Select Comm. on Small Business, 87th Cong., 1st Sess. (1961); Government Procurement—1960: Hearings Before the Subcomm. of the Senate Select Comm. on Small Business, 86th Cong., 2d Sess. (1960).

Reports:

House Select Comm. on Small Business Government Procurement Within Military and Civilian Agencies, H.R.Rep. No. 1749, 94th Cong., 2d Sess. (1976); Senate Select Comm. on Small Business: Twenty-Sixth Annual Report, S.Rep. No. 636, 94th Cong., 1st Sess. (1976); Senate Select Comm. on Small Business, Twenty-Fifth Annual Report of the Select Comm. on Small Business, S.Rep. No. 13, 94th Cong., 1st Sess. (1975); Senate Select Comm. on Small Business, Small Business Aspects of Selected Recommendations of the Commission on Government Procurement, S.Rep. No. 760, 93rd Cong., 2d Sess. (1974); Senate Select Comm. on Small Business: Twenty-Third Annual Report, S.Rep. No. 760, 93rd Cong., 2d Sess. (1974); House Select Comm. on Small Business, Small Business Procurement Policies of Federally Supported Programs, H.R.Rep. No. 449, 93rd Cong., 1st Sess. (1973); House Select Comm. on Small Business, The Position and Problems of Small Business in Government Procurement, H.R.Rep. No. 1609, 92d Cong., 2d Sess. (1972); House Select Comm. on Small Business in Government—Before and After Defense Cutbacks, H.R.Rep. No. 1608, 91st Cong.,

these many volumes of committee reports, hearing transcripts, and floor debates pertinent to the Small Business Act and the Armed Services Procurement Act, the appellant fails to direct our attention to any evidence of Congressional concern that large businesses are being victimized by the operation of these statutes and regulations.

The absence of any such evidence is especially compelling in light of the intense scrutiny to which these statutes have been subjected [13] and the numerous amendments of both Acts.[14] In this regard, we take special note of a 1974 Report issued by the U.S. Senate Select Committee on Small Business after a series of hearings on the government procurement process.[15] The hearings and the report focused specifically on certain recommendations of the Commission on Government Procurement,[16] including that the Congress, "Establish new standards for annually measuring the performance of procuring agencies and their prime contractors in using small businesses. Standards for measuring performance, including the sound use of set aside techniques, should assess progress made in assisting small businesses to obtain a fair proportion of awards—not just statistical percentages."

In its consideration of this proposal, the Senate Committee specifically addressed the possibility of "a fair proportion projection based on an industry-by-industry analysis." [17] In rejecting the blanket imposition of such a system, the Committee quoted the testimony of John M. Malloy, Deputy Assistant Secretary of Defense for Procurement, that:

Extension of the present system to provide an optimum measure would involve analysis of many thousands of individual procurement actions, proposed to be made and already made, and analysis of the potential (or actual) share for small businesses. We simply do not have the capability of making projections in that detail, nor of analyzing the circumstances surrounding individual procurements at a level above the purchasing activity. Nor do I think we could gear up to cope with it.[18]

Thus, in 1973, sixteen years after the initial promulgation of the Defense Acquisition Regulations, Congress was unequivocally notified that the Defense Department was not applying the fair proportion standard on an industry-by-industry basis. Furthermore, this Senate Committee specif-

2d Sess. (1970); House Select Comm. on Small Business, The Position of Small Business in Government Procurement, H.R.Rep. No. 1975, 90th Cong., 2d Sess. (1968); House Select Comm. on Small Business, Small Business Subcontracting and Set-Aside Programs, H.R.Rep. No. 2341, 89th Cong., 2d Sess. (1966); House Select Comm. on Small Business, Government Small Business Procurement Policies and Programs, H.R.Rep. No. 1937, 88th Cong., 2d Sess. (1964); House Select Comm. on Small Business, Small Business and Government Procurement, H.R.Rep. No. 2562, 87th Cong., 2d Sess. (1962).

**13.** *Id.*

**14.** *E.g.,* amendments to the Armed Services Procurement Act:
65 Stat. 700 (1951); 69 Stat. 551 (1955); 70A Stat. 130 (1956); Pub.L. 85–800, 72 Stat. 967 (1958); Pub.L. 87–653, 76 Stat. 528 (1962); Pub.L. 90–268, 82 Stat. 50 (1968); Pub.L. 93–356, 88 Stat. 390 (1974); Pub.L. 96–513, 94 Stat. 2926 (1980); Pub.L. 97–86, 95 Stat. 1117 (1981); Pub.L. 97–375, 96 Stat. 1821 (1982).
Amendments to Small Business Act:

69 Stat. 225 (1955); Pub.L. 85–4, 71 Stat. 4 (1957); Pub.L. 87–305, 75 Stat. 666 (1961); Pub.L. 88–560, 78 Stat. 786 (1964); Pub.L. 89–754, 80 Stat. 1295 (1966); Pub.L. 90–104, 81 Stat. 268, 269 (1967); Pub.L. 91–596, 84 Stat. 1618 (1970); Pub.L. 92–385, 86 Stat. 554, 555 (1972), Pub.L. 93–386, 88 Stat. 742 (1974); Pub.L. 95–89, 91 Stat. 553–562 (1977); Pub.L. 95–507, 92 Stat. 1760–1762 (1978); Pub.L. 96–302, 94 Stat. 833–852 (1980); Pub.L. 97–95, 95 Stat. 767–780 (1981).
These lists are not a complete documentation of the amendments of the statutes, but provide an illustration of the intensive oversight by Congress of the operation of the statutes.

**15.** S.Rep. 760, 93d Cong., 2d Sess. (1974).

**16.** This Commission was created by Congress in 1969 to review the federal procurement process and recommend ways to improve the process. P.L. 91–129 (Nov. 26, 1969), noted in 41 U.S.C. § 251.

**17.** S.Rep. 760, 93d Cong., 2d Sess. 14.

**18.** *Id.* at 14–15.

ically relied on the above testimony of a DOD official in concluding that an industry-by-industry analysis should be applied only on a very limited test basis. It has been oft-stated that "a consistent administrative interpretation of a statute, shown clearly to have been brought to the attention of Congress and not changed by it, is almost conclusive evidence that the interpretation has congressional approval." *Kay v. Federal Communications Commission,* 443 F.2d 638, 646–47 (D.C.Cir.1970).[19]

■ Our conclusion gains additional support from decisions of the Comptroller General that the "fair proportion" requirement is applicable to the totality of government procurements. *J.H. Rutter Rex Manufacturing Co., Inc.,* Comp.Gen. B–190905 (July 11, 1978); *Fermont Division, Dynamics Corporation of America,* Comp.Gen. B–195431 (June 23, 1980). Such decisions of the Comptroller General are entitled to special deference given the complexities and intricacies of government purchasing decisions. *M. Steinthal & Co. v. Seamans,* 455 F.2d 1289, 1301 (D.C.Cir.1971); *Hayes International,* 509 F.2d at 258 n. 17; *Kinnett Dairies,* 580 F.2d at 1271–72.[20]

Rutter Rex levels a specific attack at 32 C.F.R. § 1–706.1(j)(vi) which provides that no set aside shall be disapproved merely because "small business concerns are considered to be receiving a fair proportion of total contracts for supplies or services." Rutter Rex contends that this provision allows set asides without any reference to the fair proportion statutory language and may result in small businesses actually receiving far in excess of a fair proportion of government contracts.

■ As noted by the government in its brief, this dispute boils down to a question of whether the fair proportion mandate constitutes a floor or a ceiling on the allocation of government contracts to small businesses. We are unable to conclude that the DOD's apparent decision that the mandate is a floor constitutes an unreasonable construction of the statutory language. The fair proportion standard is not an end in itself, but a means of enforcing the purposes of the Small Business Act and the Armed Services Procurement Act, *i.e.,* the protection of our country in time of national emergency and the promotion of its economic well-being. Given the exceptional deference due decisions of administrative agencies charged with implementing congressional desires and the absence of any evidence of a contrary congressional purpose, we may not overturn the agency determination that Congress intended small businesses to receive *at least* a fair proportion of government procurement contracts.[21]

Finally, we briefly consider the appellant's challenge to the goal practices of the government. The goals are not the creation of the administrative agencies but are a specific direction of Congress. 15 U.S.C.

---

19. *See also, North Haven Board of Education v. Bell,* 456 U.S. 512, 102 S.Ct. 1912, 1925, 72 L.Ed.2d 299 (1982); *United States v. Rutherford,* 442 U.S. 544, 554 n. 10, 99 S.Ct. 2470, 2476 n. 10, 61 L.Ed.2d 68 (1976); *Red Lion Broadcasting v. Federal Communications Commission,* 395 U.S. 367, 381, 89 S.Ct. 1794, 1801, 23 L.Ed.2d 371 (1969); *Florida v. Matthews,* 526 F.2d 319, 324 (5th Cir.1976).

20. Even if we concluded that Congress intended the fair proportion standard to apply on an industry-by-industry basis, it is unlikely that Rutter Rex would be entitled to relief. In *Basic-Witz Furniture Industries, Inc.,* 41 Comp. Gen. 649 (1962), the Comptroller General ruled that the placement of 90 percent of government contracts for wooden household furniture with small business concerns did not violate the fair proportion standard where over 99 percent of that industry's participants were small businesses. Likewise, in the present case, according to figures provided for the year 1977 by Andrew Canellas, the Director of the Industry Analysis Division of the Small Business Administration, 95.8 percent of firms in the textile mill products industry were small business concerns.

21. We also note that 15 U.S.C. § 644(a) apparently authorizes set asides in certain circumstances without any reference to the fair proportion standard when it provides that awards shall be set aside when determined "(1) To be in the interest of maintaining or mobilizing the Nation's full production capacity [or] (2) to be in the interest of war or National defense programs ..."

§ 644(g). We concur with the district court that "[t]he goals do not determine which contracts will be set aside; the goals set are sometimes not attained. Their function is rather to gauge the effectiveness of the small business program." 534 F.Supp. at 340. The appellant has not alleged that the goal practices are unconstitutional nor has it presented any evidence that agency implementation of the goal practices is arbitrary and capricious or in excess of statutory authority; we thus decline to interfere with this Congressional effort to assure compliance with a legitimate legislative program.

## V.

Rutter Rex also contends that it has unconstitutionally been denied access to the bidding process for government contracts. Our analysis begins with the question of whether Rutter Rex has a constitutional property interest in equal access to the bidding process.

In *Board of Regents v. Roth,* 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972), the Supreme Court wrote:

> To have a property interest in a benefit, a person clearly must have more than an abstract need or desire for it. He must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it ... Property interests, of course, are not created by the Constitution. Rather, they are created and their dimensions are defined by existing rules of understanding that stem from an independent source such as state law—rules or under-

standings that secure certain benefits and that support claims of entitlement to those benefits.

408 U.S. at 577, 92 S.Ct. at 2709. We are unaware of a single independent source in either state or federal law which would support Rutter Rex's claim of a Fifth Amendment property entitlement to participate in the awarding of government contracts.[22] In fact, the Supreme Court in *Lukens Steel* stated, "Like private individuals and businesses, the Government enjoys the unrestricted power ... to determine those with whom it will deal, and to fix the terms and conditions upon which it will make needed purchases." 310 U.S. at 127, 60 S.Ct. at 876.[23] This Court is not cognizant of any subsequent jurisprudence which would diminish the vitality of the Supreme Court's declaration and provide Rutter Rex with any grounds to claim more than a "unilateral expectation" of access to the government bidding process.

Were we not otherwise convinced of the correctness of this result, our decision appears compelled by the prior ruling of this Court in *Ray Baillie.* In that case, several small business concerns which had previously performed contracts to collect refuse from the Homestead (Florida) Air Force Base brought suit when the Small Business Administration denied their demands for an opportunity to continue to compete for the contract. The SBA in turn negotiated the contract with a black-owned competitor of the plaintiffs pursuant to a newly-promulgated program to benefit businesses owned by "disadvantaged persons."

---

22. The cases cited by Rutter Rex do not support its claim. The cases may be categorized as standing for one of the following holdings. First, that a person who contends that he or she was invalidly denied access to the government bidding process possesses standing to bring an action challenging such denial. *Copper Plumbing & Heating Co. v. Campbell,* 290 F.2d 368 (D.C.Cir.1961). Second, that a person may not be denied access to the government bidding process absent procedural regulations authorizing or governing such denial. *Gonzalez v. Freeman,* 334 F.2d 570 (D.C.Cir.1964). Finally, that when Congress delineates specific qualifications for potential bidders, a person

may not be denied access to the bidding process if he or she meets those qualifications. *Schraier v. Hinkel,* 419 F.2d 663 (D.C.Cir.1969). None of these cases point to any statute or regulation creating a Fifth Amendment property interest in the circumstances of the present case.

23. *See also United States v. New Orleans Public Service, Inc.,* 553 F.2d 459, 469 (5th Cir. 1977). Of course, in making such decisions, the government is subject to constitutional due process requirements. *Ray Baillie,* 477 F.2d at 709.

After rejecting the plaintiffs' claim that the minority program violated statutory authority, the Court summarily dismissed their constitutional challenge. The Court stated, "[W]e cannot accept the plaintiffs' argument that the [minority] program is unconstitutional because the plaintiffs may be disadvantaged competitively. *There is no constitutional duty to offer government procurement contracts for competitive bidding.*" 477 F.2d at 709 (emphasis added).

 Since no fundamental rights are implicated, we need only determine whether the contested socio-economic legislation rationally relates to a legitimate governmental purpose.[24] *Richardson v. Belcher,* 404 U.S. 78, 81, 92 S.Ct. 254, 257, 30 L.Ed.2d 231 (1971); *Dandridge v. Williams,* 397 U.S. 471, 485–86, 90 S.Ct. 1153, 1161, 1162, 25 L.Ed.2d 491 (1970). Our previous discussion adequately demonstrates that the procurement statutes and the regulations promulgated thereunder are rationally related to the sound legislative purpose of promoting small businesses in order to contribute to the security and economic health of this Nation.

AFFIRMED.

---

**24.** A second predicate to the application of this lesser standard of review (as opposed to the strict scrutiny standard of review and its requirement of a compelling governmental interest) is that Rutter Rex not be a member of a suspect class such as a racial minority. *United States v. Kras,* 409 U.S. 434, 446, 93 S.Ct. 631 [638], 34 L.Ed.2d 626 (1973). Needless to say, corporations such as Rutter Rex are not entitled to such protection.